MASON & HALE *vs.* DENISON & DENISON.

The *infancy* of one of two defendants as *joint debtors*, against whom judg-ment is rendered without assigning a guardian *ad litem* to the infant, cannot be assigned as error in fact, on a writ of error brought in the same court to revoke the judgment, where upon the *capias ad respondendum* the infant is returned *not found*, and the other defendant *taken*, and the judgment is entered against *both* defendants, pursuant to the statute au-thorizing proceedings against *joint debtors*.

If upon such judgment the *joint property* of the defendants be taken in ex-ecution, and the *infant* or defendant, not brought into court, was not lia-ble to the payment of the debt, his remedy, *it seems*, is by *audita querela* or by *bill in equity*.

The doctrine of the liability of *infants* upon contracts other than for neces-saries, and the distinction as to *void* and *voidable* contracts as applicable to infants, considered and discussed.

ERROR from the supreme court. In October term, 1828, C. & L. Denison commenced a suit in the supreme court against Mason & Hale, in which *Mason* was returned by the sheriff upon the *capias ad respondendum* as *taken*, and *Hale* as *not found*. The plaintiffs declared against *both* defendants un-der the statute authorizing a proceeding in the suit upon such a return of the sheriff in the case of *joint debtors*. The decla-ration was for *goods sold and delivered*, and contained the com-mon money counts and an *insimul computassent*. Mason gave a *cognovit* for $515,64; upon which judgment was entered against *both defendants*. In May, 1831, the defendants sued out a writ of error *coram nobis*, i. e. returnable in the supreme court, *Mason* appearing by *attorney* and *Hale* by *guardian*, and assigned for error that at the time of the rendition of the judg-ment, Hale was *an infant* within the age of 21 years, and that he ought to have been permitted to appear to defend the suit by guardian ; wherefore they prayed the judgment might be revoked. The defendants in error *demurred* to the assignment of error, and assigned for special cause that it was not alleged in the assignment that *Hale* had appeared *in any manner* what-ever in the suit in which judgment was rendered. The plain-tiffs in error joined in demurrer, and the supreme court, after argument, *affirmed* the judgment originally rendered. Mason

and Hale thereupon removed the record into this court by writ of error. See case, arguments of counsel, and opinion delivered in supreme court, 11 *Wend.* 612, *et seq.*

The cause was argued here by

*S. Stevens,* for the plaintiffs in error.

*J. A. Spencer,* for the defendants in error.

The following opinions were delivered :

By the CHANCELLOR. The original judgment in the supreme court against the plaintiffs in error, was a judgment rendered against both as joint debtors, under the statute ; the capias as to Hale having been returned by the sheriff not found. Upon a writ of error *coram vobis,* in the supreme court, it was assigned as error in fact in the original judgment, that Hale, the defendant who was not arrested, was an infant, and that he ought to have been admitted to appear and defend the suit by guardian ; and the question now to be determined is, whether a neglect to have a guardian ad litem appointed for a defendant who is not served with process, and who afterwards appears to have been an infant, is such an error as will authorize a reversal of the judgment.

Perhaps it is not necessary for the decision of this cause, to determine the question whether an infant can in any case be jointly liable with an adult, upon a contract for necessaries, if the infant thinks proper to avail himself of the plea of infancy. It is well settled that the objection of infancy is a personal privilege, and that the contracts of an infant, whether for necessaries or otherwise, are not void, but merely voidable ; and that an adult joint contractor cannot avail himself of the objection that his co-contractor was an infant. If an adult, therefore, should join with the infant in a promise to pay for necessaries furnished to the latter, I cannot see any good reason why they should not be jointly liable : or why a replication, that the goods furnished to the infant, and which formed the consid-

eration of the promise laid in the declaration, were necessaries suitable to his condition in life, would not be a legal and perfect answer to a plea of infancy. There certainly would be no difficulty in framing the declaration in such a manner as to meet the case supposed, so that the replication would not be considered a departure. The promises laid in the declaration in the present case, are for goods, &c. furnished to the adult as well as the infant, and also upon an account stated. These are promises for which an infant cannot be personally liable, if he avails himself of the defence of infancy in due time, and in the proper form; but still, I am not prepared to say, if the fact of Hale's infancy was shown by the declaration, and he had appeared by his guardian and neglected to make that defence, that the judgment could be reversed as erroneous.

As to the adult party, a joint promise made by him and the infant is binding as a joint contract; and a recovery may be had against him, upon a declaration stating it as a joint contract made by him and the infant, although the infant avails himself of the defence of infancy. This was so decided by the supreme court of this state, in the case of *Hartness* v. *Thompson and others*, 5 *John. R.* 160; and in the case of *Gibbs* v. *Merrill*, 3 *Taunt.*307, Sir J. Mansfield, although he said he could never understand the rule of law which declared an infant's contracts only voidable, but not void, decided that a plea in abatement, by an adult defendant, that the contract was made by him jointly with another person, was sustained by proving that the bill of exchange upon which the suit was brought, was accepted by the defendant and an infant jointly. Several nisi prius decisions in England, as well as a dictum of Sir James Mansfield in the case last mentioned, are in opposition to the judgment of the supreme court in *Hartness* v. *Thompson*. I am not aware, however, that the question has ever been finally settled in that country. The decision of our supreme court was sanctioned by a majority of the court of appeals in Virginia, in the case of *Cole* v. *Pennel and others*, 2 *Rand. R.*178; and it has been subsequently followed by the courts of our own state. *See ex-parte Nelson*, 1 *Cowen's R.* 417. I think the decision in the case of *Hart-*

ALBANY,
Dec. 1835.

Mason
v.
Denison.

*ness* v. *Thompson* is correct in principle, and that a joint contract made by an infant and an adult, constitutes a case of joint indebtedness, within the meaning of the statute authorizing the plaintiff to proceed to judgment against the party arrested and the one not taken, jointly, for certain purposes; 1 *R. L.* 520, §13; 2 *R. S.* 377, §1; although such contract is not absolutely binding upon the infant, if he thinks proper to avail himself of the defence of infancy.

It is undoubtedly a general rule, that no judgment or decree can be rendered or made against an infant by default; that if the infant neglect to appear by guardian, it is the duty of the plaintiff to procure a guardian ad litem to be appointed for him; and if he appear by attorney, or in person, without a guardian, it is error. The statute, 1 *R. L.* 416, §2, 2 *R. S.* 446, §8, requiring the appointment of guardians ad litem for infant defendants, is in accordance with this general principle. I cannot believe, however, that it was the intention of the legislature to require the appointment of a guardian ad litem for an infant joint debtor who had not been served with process, and against whom no personal judgment could be obtained. The object of this statutory proceeding was to save the delay and expense of an outlawry, by enabling the plaintiff to reach the person and the property of the debtor who was within the reach of process, and also the joint property in his hands, or under his control; which property he might, therefore, apply to the discharge of the debt, without consulting with his co-contractor.

The objection, that by this course of proceeding an infant might be deprived of his defence, and that the property which he held as a joint owner with another might be taken to satisfy a demand for which he was not liable, is equally applicable to an adult who is not served with process, and who has no notice of the proceeding, and has no day in court. Such cases have undoubtedly occurred, and may again occur; but the party who has not been served with process is not without remedy. From the very nature of the case, the judgment cannot be conclusive against the party who has not been arrested, who has had no notice of the suit against him, and no opportunity to appear and defend the same. Where the person not serv-

ed with process was not legally liable for the payment of the alleged debt for which the suit was instituted, and any property belonging to him and the other defendant jointly should be seized on the execution, he might file a bill in equity for relief. He might also obtain relief, so far as his interest in the property was concerned, by a common law writ of *audita querela.* The statute was intended to apply to actual demands against joint debtors, in which the party who was not served with process has no defence ; and the plaintiff would not therefore be permitted to use the forms of law for the purpose of doing injustice, either to an infant or an adult, who has not been notified of the proceeding against him, and who has had no day in court to protect himself or his property from an unjust claim, for which he was neither legally or equitably liable.

In the case of *Loyd* v. *Eagle, Carth.* 278, where an infant had become special bail, and upon *scire facias* a judgment was rendered against him, and he was taken in execution, he was released upon an *audita querela,* suggesting his infancy. I presume in that case the judgment against the infant as bail must have been rendered upon the return of two nihils, and without any actual notice and appearance by guardian ; although the particular facts are not stated in the report. So in *Allan* v. *Minor,* 2 *Rand. R.* 71, where an infant became surety in a bond to replevy an execution, upon which, by the laws of Virginia, the plaintiff was entitled to execution by a summary proceeding and without notice, and execution was taken out against him accordingly, the infant was relieved in equity, upon the ground that he had no day in the court of law, and could not be admitted to make his defence there. In either of these modes, therefore, the rights of an infant who is nominally impleaded as a joint debtor, will be much more effectually protected, than by the appointment of a guardin ad litem upon the nomination of the plaintiff, where neither the infant or his friends have notice of the institution of the suit ; even if a guardian could be appointed to appear for him in such a case.

The original judgment in the supreme court, being strictly in conformity with the statute relative to proceedings against

joint debtors, was not erroneous ; and it should not be reversed for the supposed error in fact assigned in the supreme court, although the infant was· not without remedy, if his property was in fact levied on, to satisfy a debt for which he was not legally liable.    The last judgment rendered upon the writ of error *coram vobis* was therefore correct, and should be affirmed.

By Senator TRACY.    There is no doubt that, by common law, an infant defendant can only appear by guardian, and· if judgment go against him without such appearance, it is error—and that, whether he is a sole defendant or one of several defendants ; and in the latter case, the judgment will be reversed *in toto*, for an entire judgment cannot be reversed as to one and affirmed as to others.    In the case in hand, therefore, if the process had been served on the infant, and the judgment had gone against him by default, or confession, or any otherwise, without the intervention of a guardian, error would lie by the infant to reverse it.    Here, then, the point occurs, whether the statute, 1 *R. L.* 521, relative to proceedings against joint debtors, which is substantially re-enacted, 2 *R. S.* 377, has that operation upon infants, that a judgment obtained against them without process served, shall be *more* effectual in some respects than if the process had been served on them.

Upon this point two questions arise : 1. Can an infant be a joint debtor ? 2. If he can be, is he included within the general words of the statute ?    The first question involves one of the most unsettled and debateable propositions in the whole law—that is, how far has an infant the capacity of contracting.    The general principle of the common law is well understood, that infants are supposed to be destitute of sufficient understanding to contract, and therefore, in regard to their weakness and imbecility, the law will protect them against their own acts, except in a few enumerated cases where the act is clearly for their own benefit.    But the point that is perpetually mooted, and upon which a great many decision are founded, which in principle are wholly irreconcilable, is whether an infant's contracts are void, or only voidable.    That some

are of one description and some of the other, all the books agree; but in attempting to furnish a rule for discriminating the one from the other, most of the books disagree, and all of them, I think, fail. An old rule attempted in England was, that all gifts, grants or deeds made by infants, which do not take effect by delivery of his hand, are void; but those, being in deed or writing, which do take effect by delivery of his hand, are *voidable*. But this rule, though resting on high authority, was soon found to be too narrow and artificial, and the courts would not adhere to it. Another rule proposed was, that those acts are *void* in which there is no semblance of benefit to the infant; while those from which he may receive benefit are *voidable* only. But this rule carries on its face the proof of its impracticability; for how shall it be known from an act or instrument, whether benefit to the infant will or will not result from it; and therefore this rule also was soon departed from, or at least attempted to be modified. In *Oliver* v. *Houdlet*, 13 *Mass. R.* 240, it is ruled that those acts alone are void which not only apparently, but *necessarily* operate to the infant's prejudice. This in effect abolishes all distinction between void and voidable—at least, it makes such a distinction utterly nugatory; and undoubtedly the tendency of modern decisions is to establish that the acts of an infant are never void—that is, exactly as if they had never existed in fact, but only voidable. Still there are many stubborn decisions to the contrary, coming down to a very recent date, where particular acts of an infant are pronounced absolutely void, equally as though they were the acts of an idiot, or of an insane person. Thus it was determined in 1 *Lev.* 86, 7; and again, in *Saunderson* v. *Marr*, 1 *H. Black*, 75, that a warrant of attorney given by an infant is absolutely *void*, and not merely voidable. So in *Popham*, 178, it was in effect decided that a parol promise or contract by an infant is void; and again *Derby* v. *Boucher*, 1 *Salk.* 279, it was expressly decided by the court that infancy might be given in evidence under the general issue, " non assumpsit," because the infant's promise was absolutely *void*, and not merely voidable, as a deed, which, taking effect by delivery, is a more deliberate act. The case in *Stone* v. *Withipoll, Cro. Eliz.* 126, is to the

same point.  In *Van Vinkle* v. *Ketchum*, 3 *Caines' R*.323, the decision of the supreme court of this state is on the same principle ; and in *Swasey* v. *Adm. of Vanderheyden*, 10 *Johns.R.* 33, the decision is express, that a negotiable note, given by an infant even for necessaries, is void.   In *Conroe* v. *Birdsall*, 1 *Johns. R*. 127, it was held that a bond executed by an infant is void, though he fraudulently alleged, at the time of making it, that he was of full age.   Many other cases might be adduced, where the acts or contracts of an infant are adjudged void, especially in respect to parol promises.   And an authority to this point, of greater weight than any single case, and perhaps than many cases, is to be drawn from the entries or precedents of pleading.   Lord Coke says, "One of the best arguments or proofs in law is drawn from the right entries or course of pleading."   Now all treatises of pleading, both English and American, admit that infancy may be proved under the general issue of non-assumpsit, which would be contrary to all analogy, if the contract were merely voidable at the act of the party ; and in England, the practice and the precedents are uniform to show, that a joint contract by an infant and an adult must be treated as though it were the sole contract of the adult ; and therefore, if the suit be against the adult alone, and he plead in abatement the non-joinder of his co-contractor, the plaintiff may reply his infancy.   As a consequence of this principle, the English courts hold that if the action be brought against both, and the infancy of one is alleged, the plaintiff shall be nonsuited.   But this position, and as I understand the case, this only, was overruled by the supreme court in *Hartness* v. *Thompson, 5 Johns. R.* 160, where it was decided that in such a case the plaintiff might enter a *nolle prosequi* as to the infant and take his judgment against the adult.   The decision, however, amounts only to a rule of practice, and does not necessarily overturn the main proposition laid down by Sergeant Williams, Chitty and other great authorities, that the plaintiff may treat the contract of the infant as a nullity, and proceed against the adult as though he were the sole contractor.   Now if this position be correct, and I have no doubt of it, it necessarily subverts, or rather qualifies two propositions, frequently, and I ap-

ALBANY,
Dec. 1835.

Mason
v.
Denison.

prehend sometimes loosely given out; first, that certain contracts by an infant are merely voidable ; and second, that no one can avail himself of the fact of infancy but the infant himself.  With great diffidence I will suggest, that possibly what has led to so much difficulty in construing the contracts of infants, and produced so many conflicting adjudications, is mainly the wrong use of terms, or the application of words having a general legal meaning, to a case where the general meaning does not express the exact idea intended.  When the law terms a contract merely voidable, it means that it is valid and effectual unless and until the party does something, which he may do, to avoid it, and the term therefore is applied with great propriety to certain consummated acts of an infant, as where he has paid money, delivered property in exchange, &c. &c. ; but it is improperly applied, I apprehend, to every case of a prospective act agreed to be performed by an infant, for in respect to such, the affirmative action of the infant to disannul them is not required.  On the contrary, they are null and unenforceable against the infant except he does something to ratify them.  All executory agreements therefore by an infant, except for the payment for necessaries, should be termed, what in truth the law deems them to be, inchoate contracts, capable of being completed by the infant by a subsequent act, but not capable of being enforced against him without such subsequent act.  In other words, it is in no proper sense a legal contract, though it may be a foundation or legal inducement upon which the party by his own act may complete a legal contract.  Sir James Mansfield, in *Burgess v. Merrill*, 4 *Taunt*. 468, ridicules the idea of a contract that does not bind the parties to it ; that " it is inseparable from the idea of a contract that it should be binding," and sheer nonsense to talk of avoiding a contract, by pleading that it is not a contract.

It will be said perhaps that this construction will interfere with the principle established in *Zouch v. Parsons*, 3 *Burr*. 1806, and frequently recognized and confirmed in our courts, that the promise of an infant is a sufficient consideration for a mutual promise, as of marriage, &c.  But it is not apparent how it will.  The principle in the form now maintained is an

ALBANY
Dec. 1835.

anomaly, and only sustainable as an exception to the general rule that mutual promises, to be valid, must be mutually obligatory.    The case of *Holt* v. *Ward*, 2 *Str.* 937, has to come to the point, that the case of an infant is an exception to the general rule ; and when it is determined to make an exception of it, it may as well be put on the true ground as on a false one.    It is not there maintained, nor has it ever been since, that the promises are reciprocally obligatory ; but merely because one party *might*, (if she should afterwards conclude to do so,) fulfil her promise, the other party *should* therefore fulfil his.    Here the promise or contract of the infant is termed voidable, as if it were good till it was rescinded, while in fact it is good for nothing till it is subsequently ratified ; for the marriage could not occur without a subsequent act, nor could the infant be sued for withholding that act.    All, therefore, that the principle amounts to, is, that an invalid promise by an infant is a sufficient consideration for a valid promise by an adult, and that the rule is not universal that it is a *nudum pactum* where promises are not reciprocally obligatory.

If it be correct then, that a parol promise by an infant, though not strictly void, that is, as if it had never existed, is still something less than voidable, that is, binding till disaffirmed, we may perhaps get at a middle ground upon which the clashing decisions on this point may be brought, and the principles of them reconciled.    The ground is, that though the promises of an infant have not in themselves the essence of a contract, that is, obligation, yet they constitute a sufficient consideration for a mutual promise by another ; and also a sufficient consideration for a new promise by the infant, when he shall be capable of making a valid promise.    Until he shall do this, I suppose no judgment againt an infant for the non-performance of his promise, where the fact of his infancy appears on the record, excepting the single case of a promise for necessaries, can be given.

From this view of the nature of infants' promises or undertakings, it would seem to follow that he cannot be a joint debtor with another ; for there can be no debt where there is

Mason
v.
Denison.

no obligation to pay ; and certainly the promise of an infant founded upon any consideration but that of necessaries furnished, does not create a legal obligation upon him. It is upon this very principle that infancy is a full defence under the general issue in assumpsit, and that a plaintiff, as before shewn, may maintain an action upon the joint promise of an infant and an adult, as though it were the sole promise of the adult.

But if this view be incorrect, I am inclined to believe that the general words of the statute authorizing a form of proceeding against joint debtors in derogation of the common law, should not be so construed as to include infants, even if they are capable of making themselves joint debtors. It is an old principle that general words in a statute do not take away the common law, a former custom, or a former statute. So they do not take away a particular custom or privilege. Thus, under the statute of *West.* 2, *cap.* 18, which is general, that when a debt is recovered or acknowledged in the king's court, or damages awarded, &c. the person recovering shall have at his election a *fieri facias* or an *eligit*, it was held not to deprive an infant of his privilege of not being sued during his nonage, and therefore the elegit could not issue against the heir of a conusor, being an infant. 2 *Institutes*, 394. Again, 2 *Inst.* 409, *ch.* 25, *pl.* 19, where a penalty is imposed for alleging false exceptions to a writ of novel disseisin, in general words, it was held that feme coverts and infants are not within it. So, 3 *Buls.* 275, under the statute 2 *West.* 2, *ch.* 35, which requires that the plaintiff should give pledges in the writ of ravishment of ward, it was held that an infant plaintiff was not included within the general words of the statute.

I am the more inclined to this construction from regard to 1 *R. L.* 416, §2, which provides that when an infant shall be impleaded, a guardian shall be appointed to defend for him. This provision, so consonant with the tender regard manifested by the common law for infants, would be entirely defeated if the statute authorizing proceedings against joint debtors be held to include infants. It is said, to be sure, that the defendant not served with process, is not impleaded ; but the answer

is that the statute shall not be construed to take from an infant without notice, a protection which could not be taken from him, nor of which could he deprive himself after notice. Besides, it is not easy to conceive how a person can be a defendant on the record and have a judgment rendered against him without being impleaded in the suit. The statute is that the plaintiff shall have his judgment against all the joint debtors, the same as if they had all been taken and brought into court. I suppose the very purpose of the statute is to afford the means of impleading persons who could not be arrested. On the whole, I shall vote for reversing the judgment of the supreme court.

On the question being put, *Shall this judgment be reversed?* the members of the court voted as follows:—

*In the affirmative*—The PRESIDENT of the Senate, and *Senators* CROPSEY, EDMONDS, FOX, LACEY, M'DOWELL, MAISON, SEGER and TRACY—9.

*In the negative*—The CHANCELLOR, and *Senators* ARMSTRONG, BEARDSLEY, BECKWITH, BISHOP, DOWNING, EDWARDS, FISK, GANSEVOORT, HALSEY, LAWYER, MACDONALD, WILLES, YOUNG—14.

Whereupon the judgment of the supreme court was AFFIRMED.