In the Matter of the Estate of SAMUEL J. SONDERLING, Deceased.

Surrogate's Court, Westchester County, November 1, 1935.

*Abraham Wilk*, for Rose Siegel and another, administrators of Lena Sonderling, deceased, for the motion.

*Hollander & Bernheimer* [*Edgar J. Bernheimer, Harry T. Zucker* and *Sydney J. Schwartz* of counsel], for the distributees of Lena Sonderling, deceased, for the motion.

*Emil Goldmark* [*Walter M. Schwarz* and *Walter J. Fried* of counsel], for the Federation for the Support of Jewish Philanthropic Societies of New York City, in opposition to the motion.

*Bachrach, Bachrach & Bisgyer*, for the Brooklyn Federation of Jewish Charities, a legatee.

*Mitchell, Taylor, Capron & Marsh*, for the City Bank Farmers Trust Company, executor and trustee.

SLATER, S. In the accounting and construction proceeding the court construed the will of the testator, especially with reference to the effect of section 17 of the Decedent Estate Law. The opinion decision, filed April 25, 1935, is reported in 155 Miscellaneous Reports, 403. The contest had been brought by the committee of Lena Sonderling, testator's incompetent mother.

On May 25, 1935, after the rendition of the opinion decision, but before the entry of the decree thereon, the mother, Lena Sonderling, died. Her committee became "*functus officio.*" Her administrators now seek to be substituted in place of the committee in this proceeding.

It is contended by the residuary legatee, the charitable corporation, that the right of action did not survive her death, and that it takes the residuary estate.

It has been uniformly held that section 17 of the Decedent Estate Law, as existing prior to the amendment by chapter 229 of the Laws of 1929, could be questioned by any person who would benefit by the application of its terms, irrespective of whether or not the objector was within the class of persons expressly named in the statute. (*Decker* v. *Vreeland*, 220 N. Y. 326; *Matter of Mosley*, 138 Misc. 847; *Matter of Sloat*, 141 id. 710, 712.) Under the former law (Chapter 360 of the Laws of 1860), as amended, a right of property existed in those who would take the intestate part pursuant to the Decedent Estate Law. Testamentary power may be limited by law. The act of 1860 imposed a limitation on the right of the

testator to devise. (*Amherst College* v. *Ritch*, 151 N. Y. 282, 333.) It was not against public policy to allow gifts to charitable corporations. The law was not conceived in hostility to such corporations. " It is aimed simply at the giving of an undue proportion to charity by will, when certain near relations have, in the opinion of the Legislature, a better claim." (*Matter of Tone*, 186 App. Div. 361; affd., 226 N. Y. 696.)

And so chapter 360 of the Laws of 1860 continued as amended by chapter 301 of the Laws of 1923. Then came a revision of the Decedent Estate Law by the Commission to Investigate Defects in the Laws of Estates, resulting in chapter 229 of the Laws of 1929, in effect September 1, 1930. The report of the Commission with reference to section 17 in part said: " It is also now proposed that the right to object to the will shall be limited to those whose survivorship gives the ground for the objection. Instances are not infrequent of remote relatives alone making objections to the will and receiving portions of the estate bequeathed for charitable purposes — a result which is not within the apparent purpose of the legislation." (Legis. Doc. 1930, No. 69, p. 74.)

One of the " instances " referred to by the Commission in its report is *Matter of De Lamar* (203 App. Div. 638; affd., 236 N. Y. 604).

The amendment to section 17 in 1929 included a new clause as follows: " *The validity of a devise or bequest for more than such one-half may be contested only by a surviving husband, wife, child, descendant, or parent.*" Another clause of the amendment related to non-allowance of interest or gains to charities where there has been postponement of payment.

What is the effect of the amendment, if any, upon the intestate rights of the mother of the testator in the instant case?

Here the mother is one of the preferred class, and also sole distributee. There will be cases where persons other than members of the preferred class will be distributees.

An anomalous situation is created by the present law. It is claimed that in one part of the statute the Legislature restrains the giving of more than one-half; and in another part permits charitable corporations to take such intestate property, if no contest takes place; that it takes away the remedy of the distributees and vests in a preferred class the right to start a contest which would result in reclaiming such half.

A question of statutory construction is presented.

The cardinal rule in the interpretation of statutes is to give effect to the intention of the Legislature. (*People ex rel. Steckler* v. *Warden, etc.*, 259 N. Y. 430.) In ascertaining that intention, con-

sideration should be given to the relevant conditions that existed when the statute was adopted, the evils it was designed to remedy, and the reasons for, and the spirit of, the enactment. (*Archer* v. *Equitable Life Assurance Society*, 218 N. Y. 18; *Wiley* v. *Solvay Process Co.*, 215 id. 584.)

Where the intention of the Legislature can be ascertained by reference to the evils which the statute was intended to remedy and the reasons for, and the spirit of, the enactment, such intention will be given effect even though such construction may be contrary to the literal meaning of some provisions of the statute. (*People ex rel. Wood* v. *Lacombe*, 99 N. Y. 43; *Bell* v. *Mayor, etc., of N. Y.*, 105 id. 139; *Riggs* v. *Palmer*, 115 id. 506, 509; *City Bank F. T. Co.* v. *N. Y. C. R. R. Co.*, 253 id. 49.)

Here, however, we have the legislative intent revealed in the language of the act itself.

The former law stopped the testator in his attempt to give more than one-half of his estate to charity, and gave a property right in the remaining half to his heirs at law and next of kin. The 1929 amendment changed this and allows the will to run its course, as in the instant case — a gift of the entire estate to charities, unless one of the preferred class exercises the right of contest. The failure to assert the right to contest the validity creates a waiver and permits the charity to take the whole estate. The result is the same as if section 17 did not exist. The *right* to start the contest is personal to the privileged class. The distributees cannot obtain the benefits of the statute without the affirmative act of the preferred class. Such act of contest sets their rights in motion. Their rights attach at once. Before the contest they had an expectancy or inchoate right. The Legislature did not intend to utterly destroy their right of property, but only to suspend, or hold the right of property in abeyance, awaiting action by contest by the preferred class, when the half is to be treated like all other intestate property and distributable accordingly.

Where the whole estate, as in the instant case, is given to charities, subject to certain trusts, the gift to such charities over and above one-half of the estate becomes vested in such charitable corporations, subject, however, to divestiture. Here the preferred class, the mother, set the court in motion and the statute in operation, by contesting the validity of the gift.

The amending clause, written in the negative form, halts for a time the right of distributees to take intestate property by stating that the validity of the gift of property, theretofore denied to the testator to make, may be contested only by the preferred class.

The Legislature in its declaration of public policy left it to the preferred class to decide whether the suspended right should ripen into a vested estate by the filing of a contest.

Whenever the right to contest is energized, there issues a right other than the personal privilege to contest — the right to intestate property, which is a property right. Whenever the privilege or right to contest is exercised, the right of property of all distributees in the excess becomes actual. (*Matter of Apple*, 141 Misc. 380, 383, FOLEY, S.)

When the mother asserted her personal privilege to set the statute in motion by contesting the validity of the will, her dormant property right as distributee, founded upon the laws of intestacy, at once sprang into being and an equitable title to property became vested in her.

It was said in *Matter of Hills* (264 N. Y. 349, 355), in reference to the new amendment to section 17, that " The choice between assertion of the right or its waiver is not conferred by the statute. It is inherent in all property rights and personal causes of action."

The testator here could not make an effective valid gift to charity of more than one-half of his estate, if the mother contested the bequest. The right to have the instant proceeding continue depends upon whether the mother had, by the exercise of the right to contest, acquired a right of property as distributee.

Does the right to continue the contest reside in her administrators? What was the effect of her effort to question the will upon her right to take intestate property under subdivision 3 of section 83 of the Decedent Estate Law?

Do the proceedings up to the present time taken by the committee of Lena Sonderling constitute a sufficient " contest " of the validity of the will? What did the Legislature mean when it said that the validity of the will *may be contested* only by a surviving husband, wife, child, descendant or parent?

What is meant by the word " contest " as used in the amendment? How may it start? Is the property right revived and restored to distributees when the preferred class commences a proceeding to dispute the will? Or is it when the parties are at grips in court (*Matter of Cronin*, 143 Misc. 559, 564)? Or is it when the decision or decree of the court is filed?

The word " contest " in the *Cronin Case* (*supra*) was used in an *in terrorem* clause in a will to deprive one of his right to property. The intention of the testator controlled. The court applied a construction most favorable to the legatee. In *Killian* v. *Metropolitan Life Ins. Co.* (251 N. Y. 44) the word " contest " was con-

strued as used in a contract. In the instant case the word is used in statute law to bring into being a right to property. Thus are presented three possible views as to when the contest starts. The view to be preferred is the one that the contest is started whenever the preferred class asks the court in the first instance to determine their rights. The statute is remedial and should be liberally construed.

The contest begins when the preferred class first questions the validity of the will and seeks to assert the right granted by the statute. The word " contest " as used here should be held to mean " to make a subject of dispute;" " to call in question;" " to contend." Instituting the proceeding to test the validity of the will makes out a contest within the meaning of the statute.

I hold that the mother as distributee acquired a property right at the very time she commenced the contest by filing her objections when the will was offered for probate. Such right survives her death. The proceeding does not abate. (Civ. Prac. Act, § 82.) The mother's death permits her administrators to pursue the right which their decedent possessed. (*Van Alen* v. *Hewins*, 5 Hun, 44; *Matter of Burridge*, 234 App. Div. 457, 459, 460; revd., on other grounds, 261 N. Y. 225.) The right of property passed to the representative of the deceased owner. Property rights are involved and the privilege of intervention passes on. (*Matter of Mackenzie*, 156 Misc. 616.)

Let us assume that the right of distributees is only a *personal* right and, consequently, did not survive. Did the *decision* of the court serve to secure the mother's right to such intestate share? The proceeding was reached on the calendar; arguments of counsel had; briefs filed; and the court rendered its opinion decision a month prior to the death of the mother. No decree had been submitted or signed before the mother's death. However, the court had determined the rights of the parties, and, by the decision, the proceeding had reached a stage at which the mother was entitled to a vested right in property, subject to the trusts created by the will. (*Robinson* v. *Govers*, 138 N. Y. 425; *Matter of Stevens*, 154 Misc. 415; 1 C. J. p. 165, § 280; p. 167, § 285.)

The decision being captioned in the matter and signed by the court, it was a sufficient form of order. " Such a direction, unless it is contained in a judgment, is an order." (Civ. Prac. Act, § 127; Rules Civ. Prac. rule 70.)

Section 478 of the Civil Practice Act provides: " If either party to an action dies after an accepted offer to allow judgment to be taken or *after a verdict, report or decision,* * * *, but before a

final judgment is entered, the court must enter final judgment in the names of the original parties."

These provisions are made applicable to proceedings in Surrogates' Courts. (Surr. Ct. Act, § 316,)

In *Uline* v. *N. Y. C. & Hudson R. R. R. Co.* (79 N. Y. 175 [1879]) it was held that the decision of a judge in settling interrogatories was an order in the action.

In *Matter of Pearson* (214 App. Div. 847 [4th Dept. 1925]) it was said that " The paper signed by the justice presiding at Special [Trial] Term dated in the caption * * *, while unusual and irregular in form, is not ambiguous in its terms and contains all the elements of an order as provided in section 127 of the Civil Practice Act and rule 70. It must, therefore, be given effect notwithstanding its anomalous structure."

In chancery suits there was no abatement by death in any case. In all cases, when application was required to be made, it was in the discretion of the court to refuse or grant it and, in case of unreasonable laches or for other just cause, the court was accustomed to deny it. (*Evans* v. *Cleveland*, 72 N. Y. 486.)

Upon all the grounds stated herein, the motion to substitute is granted.

Counsel have briefed other questions. These matters will not be decided on this motion.

Submit order on notice to all attorneys.