In the Matter of the Estate of MARY J. DONNELLY, Deceased.

Surrogate's Court, Kings County, September 22, 1939.

*Donald J. Turrill*, for the Title Guarantee and Trust Company, as executor, etc., petitioner.

*Twyeffort & DuBois* [*Frank H. Twyeffort* of counsel], **for** The American Mission to Lepers, Inc., and The Life Line Mission, Inc., residuary legatees.

*Francis M. Verrilli*, special guardian for Clarence G. Donnelly and James Donnelly.

WINGATE, S. The question here presented is interesting and, so far as the diligence of counsel and the independent research of the court have disclosed, novel.

The decedent died in December, 1937, leaving a will, executed on May 1, 1934, which has been probated. By its terms she gave her entire estate, which amounted to a gross sum of $9,000, to two charities. The third item of the document recites that the testatrix, who describes herself as a widow, makes no provision for her son, Clarence, because she has not seen or heard of him since December 23, 1896, and does not know whether he is dead or alive.

This son and the decedent's husband were served by publication in the present proceeding for judicial settlement of the accounts of the executor but have failed to appear and a special guardian has been appointed to protect their interests. The latter, while finding no fault with the acts of the executor, has interposed objection to a distribution pursuant to the terms of the will, asserting its partial invalidity under section 17 of the Decedent Estate Law on the ground that more than one-half of the gross estate less debts has been given to charity.

It is his position that instead of being paid to the Life Line Mission and the American Mission to Lepers to aid in the further-

ance of their humane and beneficent work, as the testatrix intended, one-half of her property must be impounded in the hands of the Comptroller, there to await the remote contingency that the missing husband or son, who decamped seven years short of half a century ago, may appear to claim it.

The accountant has submitted affidavits by an " investigator," which are accepted by the special guardian at their face value. These indicate merely that he made two series of recent investigations respecting the missing son and husband but failed to uncover any information respecting their existence or whereabouts, or indeed anything beyond the data supplied in the will by the testatrix herself. The extremely interesting and able brief of the special guardian fully establishes the worthlessness of this demonstration for any practical purpose. The special guardian, on the other hand, has tendered no indication that either the husband or son, or any person representing them, is in existence and relies solely on the inference of continuance of life by reason of the indication of the will that the son was alive some forty-three years ago.

It is his further position that his objection to the terms of the document must be sustained unless the court shall indulge an inference of the death of the son and husband by reason of the elapse of this extended period. The court is unconvinced that it is faced by a choice between these alternatives.

Section 17 of the Decedent Estate Law, after providing that no person survived by a spouse, descendant or parent shall give more than one-half of his estate to charity, reads: " The validity of a devise or bequest for more than such one-half may be contested only by a surviving husband, wife, child, descendant or parent."

The effect of the statute has repeatedly been determined. Where a gift of more than one-half of the estate is given to charity, the excess amount vests in the donee in the first instance subject to divestiture in the manner expressly specified in the statute. (*Matter of Sonderling*, 157 Misc. 231, 234.) The gift of such overplus is not void but merely voidable, depending on whether or not some individual enumerated in the statute chooses to initiate a proceeding appropriate for the subversion of the indicated testamentary wish of the decedent. (*Matter of Gaubert*, 164 Misc. 768, 770, 771; *Millard* v. *Humphrey*, 8 F. Supp. 784, 788; *Matter of Rosenberg*, 164 Misc. 837, 838. See, also, *Amherst College* v. *Ritch*, 151 N. Y. 282, 334.)

The only persons, under the terms of the statute, by whom such action may be initiated are a surviving spouse, descendant or parent. It has been repeatedly held that the authority thus accorded them is a personal privilege (*Amherst College* v. *Ritch*, 151 N. Y. 282, 335;

*Matter of Hills*, 264 id. 349, 354; *Matter of De Lamar*, 203 App. Div. 638, 641; *Matter of Sonderling*, 157 Misc. 231, 234), similar to the right to plead usury (*Amherst College* v. *Ritch*, 151 N. Y. 282, 325), or to assert infancy. (*Matter of Ziemba*, 165 Misc. 853, 857.) The " choice of waiver or assertion of the right rests with the individual upon whom the right has been conferred by law." (*Matter of Hills*, 264 N. Y. 349, 354.)

The question thereupon arises as to whether the present special guardian possesses authority to assert this personal right of his wards. The authority enjoyed by such a functionary is limited indeed. (See Rules Civ. Prac. rule 42; *Matter of Schrier*, 157 Misc. 310, 312.) He clearly possesses no inherent authority to assert a right of election under section 18 of the Decedent Estate Law even though the will gives his ward no gift whatsoever (Dec. Est. Law, § 18, subd. 6; *Matter of Lottman*, 145 Misc. 839, 853, and authorities cited), nor could he exercise a personal privilege to disaffirm a transaction of his ward which was voidable by reason of infancy. (*Beardsley* v. *Hotchkiss*, 96 N. Y. 201, 211; *Slocum* v. *Hooker*, 13 Barb. 536, 537. See, also, *Mason & Hale* v. *Denison & Denison*, 15 Wend. 64, 65; *Van Bramer* v. *Cooper*, 2 Johns. 279; *Merchants' Fire Ins. Co.*, v. *Grant*, 2 Edw. Ch. 544, 545.) On theory, it would seem that the statement in the footnote to the last cited case respecting the assertion of the personal privilege of infancy was equally applicable to the present question: " he [the infant] ought to be the exclusive judge of the propriety of the exercise of a personal privilege intended for his benefit."

Reported authority on the inherent power of a special guardian to exercise a personal right of his ward is meagre, the research of the court having disclosed five cases only, in which the question has been adjudicated. The determinations of all are, however, uniform and hold that a special guardian, or guardian *ad litem*, possesses no authority whatsoever, of his own volition, to assert a purely personal right of his ward. (*Chipman* v. *Montgomery*, 63 N. Y. 221, 235; *Train* v. *Davis*, 49 Misc. 162, 170; *Andrews* v. *Hall*, 15 Ala. 85, 90; *Haggard* v. *Benson*, 3 Tenn. Ch. 268, 277; *Matter of Burkholder*, 211 Iowa, 1222, 1225; 233 N. W. 702.) In all of these authorities it was the decision that the propriety of the assertion of the personal right of the ward must be determined by the court, and that only after an affirmative decision on the subject may a special guardian assume to proceed in such a connection. It accordingly appears to be the established law that the present special guardian, in the absence of judicial approval by this court, possesses no authority to interpose the objections which have here been filed in opposition to the effectuation of the testamentary wishes of this decedent.

The further question thereupon arises as to whether, under the circumstances of this case, this court possesses or should exercise, the power to authorize the special guardian to act upon the personal right to nullify the wishes of this testatrix, which her husband or son, if living, might exercise.

Respecting its power in this regard, no authority has been called to its attention and its extended personal research has failed to disclose any precedent whatsoever. All of the authorities, hereinbefore cited, which have determined that a guardian *ad litem* might take such action after obtaining the approval of the court, related to rights of infants. In one (*Andrews* v. *Hull*, 15 Ala. 85) the question of the authority of the court to act in such a situation was expressly raised and was upheld solely on the ground that it possessed authority over orphans and their estates. Obviously, since an infant is, in a sense, a ward of the court, it would be the duty, and consequently the privilege, of the latter to take any action available to advance the financial interest of the ward.

In the present case, however, no rights of any infant are involved. The respondents, if living, are adults, and whereas this court has exercised its discretionary authority under section 64 of the Surrogate's Court Act to appoint a special guardian to protect any property rights which they may possess, an adult absentee is in no sense a ward of the court and it appears extremely doubtful whether it possesses the authority to exercise a purely personal privilege accorded him by law.

Irrespective of whether or not such authority actually exists, however, the court is satisfied that on the facts of the present record, it should not be exercised if possessed. The absentees, if living, abandoned the decedent nearly a half century ago. Except possibly in name, she has had neither husband nor son in the interval. The property of which she has here made disposition was acquired by her own efforts and not only without aid or contribution by them but, in substance, despite their defection. The court is not so cynical respecting the frailties of human nature as to believe that under such circumstances the husband or son would wish to avail themselves of a technical rule of law designed for wholly different situations, not only to defeat the last wishes of the decedent, but in probable practical operation to divert a portion of this estate from worthy public charities to escheat to the State.

For the reasons stated, the objections of the special guardian will be overruled.

Enter decree on notice in conformity herewith.