Harold L. Wood, J.
In the complaint herein, plaintiff, in his representative capacity, charges defendant, both individually and as former guardian ad litem for Nicholas C. Tate (hereinafter the father) with "gross negligence, malpractice, nonfeasance, misfeasance, malfeasance and breach of fiduciary relationship” regarding defendant’s conduct and/or lack thereof in exercising a certain right of election on behalf of the father against the last will and testament of Nicholas L. Tate (hereinafter the son).
The issues were tried before this court alone, a jury having been duly waived by both sides.
The plaintiff administrator of the father’s estate has brought this action against defendant, a lawyer, for money damages for malpractice, essentially, and for punitive damages as may be fixed by the court. It is alleged by plaintiff that the malpractice occurred during defendant’s representation of the father as the latter’s guardian ad litem in a probate *953 proceeding concerning probate of the son’s will conducted in the Surrogate’s Court of this county.
The claim for compensatory and punitive damages results, allegedly, from defendant’s failure, as guardian ad litem of the father, to have taken steps necessary to have enabled his ward (the father) to exercise his personal right of election against an excessive testamentary gift for educational purposes (EPTL 5-3.3). While this probate proceeding concerned the will of the son who died March 31, 1971, the facts herein involved concern the estates of three decedents because, as will appear more fully below, soon after the son died, his mother, Julia Tate, died on September 25, 1971 and shortly thereafter, the father died on November 1,1971.
Under the son’s will, the father, at the time of the son’s death, then over 90 years of age, was one of the son’s two distributees, the other being the mother. The petition for probate of the son’s will was later amended to describe the father as being then a person under disability because he was incapable of managing his own affairs and a request made, in view thereof, for the appointment of a guardian ad litem to protect the father’s interests in his son’s estate. By order dated June 3, 1971, the then Surrogate appointed defendant as guardian ad litem for the father in the probate proceeding of the son’s will. Parenthetically, defendant was a long-time friend of the Tate family. In this probate proceeding, the mother was separately represented by independent counsel.
Under the terms of the son’s will dated and witnessed March 20, 1971, 11 days prior to his death, after disposing of certain personalty to his mother, the son left his entire estate, both real and personal to the University of Detroit for educational purposes. The father, through his guardian ad litem and the mother, through her counsel filed objections to the probate of the son’s will. Additionally, the mother served a written notice of election against the excessive gift for educational purposes dated and verified September 14, 1971 upon the preliminary executor appointed in the son’s probate proceeding and filed the original thereof in the Surrogate’s Court, presumably pursuant to EPTL 5-3.3 on September 16, 1971.
While the son’s probate proceeding was pending, the mother died ón September 25, 1971. Under the terms of the mother’s will, dated September 22, 1971, three days before her death, a trust was created for the father for his life with the remainder payable to defendant, her lawyer-friend who was then acting *954 as guardian ad litem for the father in the son’s probate proceeding. Defendant was also the named executor of the mother’s will and, thereafter, received preliminary letters testamentary by order of the Surrogate’s Court, dated October 19, 1971. Parenthetically, it should be noted here, that defendant was not the draftsman of the mother’s will.
While the probate proceedings of both the son and the mother were pending the father died intestate on November 1, 1971 and plaintiff herein was appointed administrator of the father’s estate by order of the Surrogate’s Court dated November 10, 1971. By instrument verified November 17, 1971 and filed in the Surrogate’s Court on November 24, 1971, plaintiff, as administrator of the father’s estate, filed objections to the probate of the mother’s will.
The probate proceedings of the son’s and mother’s wills were adjourned from time to time in the Surrogate’s Court pending settlement discussions relative to the objections filed and then, on September 20, 1972, a written agreement of settlement was entered into among the preliminary executor of the son’s estate, the preliminary executor of the mother’s estate (who was the father’s former guardian ad litem) and the plaintiff administrator of the father’s estate. Several individual beneficiaries of these estates also joined in the settlement agreement. This agreement settled the objections to probate filed against the son’s will and the mother’s will. As part of the consideration for this settlement agreement, the estate of the mother assigned to the estate of the father the elective share which the mother had sought to enforce with respect to the excessive educational gift made in the son’s will to the University of Detroit and further agreed to pay to the father’s estate the sum of $25,000.
The complaint now made by plaintiff, the administrator of the father’s estate, essentially charges defendant, the lawyer who served as the father’s guardian ad litem in the probate proceeding relating to the son’s will, with having intended to deprive his ward, the father, of the father’s right to inherit from the mother’s estate and with further injuring his ward by "failing” to take the steps necessary for the appointment of a committee for the father to protect the latter’s interest in the son’s estate through the exercise of the father’s right to elect against the excessive educational gift made in the son’s will to the University of Detroit.
Defendant, as guardian ad litem of the father, was ap *955 pointed as such by order of the Surrogate on June 3, 1971 in the probate proceeding of the son’s will. The mother’s will, as noted above, was drawn by another attorney who also supervised its execution on September 22, 1971, three days before the mother’s death. While the evidence adduced disclosed that defendant, while acting as the father’s guardian ad litem, was told by the mother in the early part of May, 1971, that the latter wanted' to make defendant a beneficiary of her will, the fact is clear that it was not until September 22, 1971 that the mother finalized her plans to do so by the execution of her will. While plaintiff has attempted to show that defendant, as guardian ad litem of the father in the son’s estate was placed in a position of conflict with his ward by virtue of defendant’s interest in the mother’s will, no such conclusion can be drawn from the record here. At no time did a will made by the mother exist in which the defendant guardian was named a beneficiary until three days before the mother died. Neither is there evidence that the defendant guardian inveigled the mother into naming him as a beneficiary in her will; rather, the evidence shows that the mother advised the defendant guardian of her testamentary thoughts and inclinations and the defendant guardian, quite properly, provided her with the name of an attorney with whom she could consult for the purpose of drawing her will (who was the same attorney who had already appeared on her behalf in the probate proceeding of the son’s will). These facts, in and of themselves, do not mean that this defendant guardian "wrote himself’ into the mother’s will. The mother did consult with her own attorney who drew her will pursuant to her instructions. Her husband (father) was her only distributee and her testamentary plan for his benefit, as set forth in her will, was consistent with his circumstances of advanced age and disability — circumstances which certainly warranted his being cared for through the medium of a trust with liberal powers of invasion rather than his being bequeathed a substantial portion of the estate outright.
More importantly, however, is the fact that there has been no showing that the defendant guardian’s knowledge of a possible interest in the mother’s testamentary plans worked to the father’s detriment. The defendant guardian duly filed objections on behalf of his ward, the father, to the probate of the son’s will and objections to the probate of the mother’s will were duly filed by plaintiff, the father’s administrator. *956 Thus, the father’s rights in both probate proceedings were protected and preserved and the objections to probates would ultimately have been judicially determined were it not for the subsequent agreement and stipulations of settlement which took place among the various parties.
Plaintiff has predicated his main charge of malpractice against the defendant guardian upon the latter’s failure to seek an advisory opinion from the Surrogate with respect to the exercise of the father’s right to elect against the excessive gift for educational purposes made in the son’s will (EPTL 5-3.3). All parties agree that this right conferred by the statute is personal and must be exercised during the father’s lifetime to be effective (EPTL 5-3.3, subd [a], par [4]). It is plaintiff’s contention that had the defendant guardian properly performed his duty, a committee for the father should have been appointed who could have then received the requisite judicial permission to exercise the right of election on the father’s behalf (EPTL 5-3.3, subd [a], par [4]).
The viability of such a contention can be sustained only if one accepts the following major premises:
(1) That under such circumstances there exists a duty on the part of a guardian ad litem to inquire of the Surrogate for advice and direction;
(2) That the Surrogate is empowered in some fashion (just how has not been shown) to direct the guardian ad litem or someone else to initiate a proceeding for adjudication of incompetency of the ward and the appointment of a committee;
(3) That the statute (EPTL 5-3.3) entitles one to exercise the right to contest an excessive testamentary gift for educational purposes before the will is admitted to probate; and
(4) That the settlement agreement above referred to does not render this action against the defendant guardian ad litem academic.
For the reasons stated below and on the authorities hereinafter cited, this court accepts none of the above premises.
THE DUTY OF THE GUARDIAN AD LITEM
Throughout this proceeding, plaintiff has stressed the unquestioned duty which a guardian ad litem has with respect to his representation of his ward and to his duty to protect the latter’s rights and interests (SCPA 404, subd 3). However, *957 plaintiff now seeks to extend that duty further to include representation of the rights and interests of the ward in matters falling outside the scope of the proceeding in which the guardian was appointed.
Extensive research by the court has failed to disclose any precedent which would establish a duty upon a guardian ad litem to inquire of the Surrogate respecting his ward’s right to contest an excessive charitable or educational gift in a probate proceeding whose purpose, concededly, is limited to the "genuineness of the will and the validity of its execution” (SCPA 1408, subd 1).
Furthermore, this question was considered by the Bennett Commission at the time it made its study concerning the complete revision of the laws pertaining to trusts and estates. In its Fourth Report (NY Legis Doc, 1965, No. 19), at page 209, it stated: "The right to contest the validity of a bequest to . charity on behalf of an incompetent or an infant is not clear. A committee has the power but only after authorization granted by the Supreme Court, which actually makes the decision whether or not to contest the provision based upon what the incompetent would have done had he been able to make a choice. Nor can a special guardian for an incompetent on his own authority exercise such a personal right. Whether a special guardian for an incompetent can be authorized by the Surrogate’s Court is questionable”. (Emphasis supplied.)
The report itself states that the commission was unable to find any case directly in point but did discover only one instance in which a court was presented with the question in the case of an unadjudicated incompetent which the court found unnecessary to answer but suggested, in dicta, that such a course should be undertaken by a special guardian (Matter of Clocke, 100 NYS2d 715). However, in Matter of Donnelly (172 Misc 107) it was there held that "a special guardian for an infant had no inherent power to question an excessive disposition and (questioned) whether the Surrogate could instruct the special guardian to do so” (McKinney’s Cons Laws of NY, Book 17B, EPTL 5-3.3, Practice Commentary, p 783). Certainly, no one can urge that this dicta should be construed as imposing a duty upon a guardian ad litem where none theretofore existed, much less to form the basis for a money judgment against him for failure to perform the alleged duty.
In short, while it may be "commendable” for the guardian to seek the advice of the Surrogate (Matter of Rappaport, *958 NYLJ, March 4, 1975, p 15, col 1 [Sobel, J.] where the question dealt with a surviving spouse’s right of election under EPTL 5-1.1), there has been no showing that the law will hold him liable in damages, either compensatory or punitive, for his failure so to do.
Indeed, the Bennett Commission, in its Fourth Report (supra), in discussing the duties of a special guardian, in Appendix 33, pointed out, at page 637, that if a ward is under a disability and a right of election exists on his part to take against the will as a surviving spouse (which is analogous to the instant case), the guardian "should advise the person under disability and any person interested in his welfare that he or she may file such an election”. In this case, the trial evidence discloses that the defendant guardian suggested to the mother the feasibility of the appointment of a committee for the father, his ward, and that the mother vehemently and absolutely refused to consider that suggestion.
In view thereof, this court is unaware of any duty nor has any basis been advanced which would compel the defendant guardian to act further or differently in this matter.
THE POWER OF THE SURROGATE .
While it is apparent from the discussion immediately above that the Surrogate may, on rare occasions, gratuitously direct the guardian ad litem in such a situation, one can easily understand why such instances are few and far between.
First, the subject of the right to elect, whether it be under EPTL 5-1.1 or EPTL 5-3.3 is one which is technically outside the issues in a probate proceeding. Second, the choice of whether to initiate a proceeding to have one declared incompetent is clearly within the province of the ward’s family. Third, the statute itself indicates that the exercise of the right to contest the excessive educational gift is "personal to the issue or parent * * * except that such a contest may be maintained by the * * * committee of an incompetent when authorized by a court of competent jurisdiction.” (EPTL 5-3.3, subd [a], par [4].) The choice of whether a committee is to be appointed is for the family and the committee, once appointed, would quite properly seek the advice and direction of the appointive court, which is exactly the procedure contemplated by the statute and is a procedure which avoids the questionable procedure advocated by the plaintiff herein. (Matter of Hills, 264 NY 349 [involving an incompetent] and Matter of *959 Donnelly, supra [involving an infant]; see, also, Matter of Chamot, 201 Misc 374.)
WHEN THE RIGHT MAY BE EXERCISED
Plaintiff has sued on the assumption that the right to contest given under EPTL 5-3.3 may be exercised before the admission of the will to probate. However, research by the court on this point leads it to believe otherwise.
Prior to the adoption of the EPTL, the right to contest an excessive charitable or educational gift appeared in section 17 of the Decedent Estate Law. No time period for its exercise was there prescribed and this lead to obvious difficulties for executors in the administration of their estates (see McKinney’s Cons Laws of NY, Book 17B, EPTL 5-3.3, Practice Commentary by Samuel Hoffman, p 783, last par). A time limitation, designed to parallel the provisions of the surviving spouse’s right of election against a will under EPTL 5-1.1 (subd [e], par [1]) (then Decedent Estate Law, § 18, subd [d]) was enacted in the new EPTL, appearing therein as section 5-3.3 (subd [a], par [5]). While the Practice Commentary of Professor Hoffman states (p 784) that the section "parallels precisely” the procedure set forth in EPTL 5-1.1, this does not appear to this court to be entirely accurate. (Cf. NY Legis Doc, 1965, No. 19, supra, p 224 et seq.) The new statute (EPTL 5-3.3) mandated that an election to contest the excessive charitable or educational gift "must be made within six months from the date of the issuance of letters” (emphasis supplied). Inadvertently, a saving provision in favor of infants and incompetents whereunder they were allowed to contest beyond the six-month period was omitted in EPTL 5-3.3 although the provision did exist in EPTL 5-1.1. (Matter of Rockefeller, 63 Misc 2d 1036.) The omission was remedied by amendment enacted by chapter 45 of the Laws of 1973 so as to bring this statute in line with the provisions of EPTL 5-1.1 on this point.
In 1971 on the recommendation of the Surrogates’ Association, chapter 798 of the Laws of 1971 was enacted, which amended EPTL 5-1.1 so as to enable a surviving spouse to file a notice of election and serve the same upon the person named as executor in a will on file in the Surrogate’s Court in a situation where the will had not yet been admitted to probate. The note to this chapter states: "Its purpose is to permit a surviving spouse to serve a notice of election upon a person named as executor in a will in a case where probate of *960 the will is delayed and there is necessity for the spouse to act without delay.”
It is noteworthy that, despite the avowed intention of the Legislature to conform EPTL 5-3.3 to the provisions of EPTL 5-1.1 no similar change was recommended by the Surrogates’ Association, with respect to EPTL 5-3.3, to enable one to exercise the right granted under the latter section before probate.
Moreover, further statutory grounds exist which reinforce the court’s belief that the right to contest under EPTL 5-3.3 may not be exercised before admission of the will to probate. These sections are SCPA 705 entitled "Time, how reckoned upon successive letters” and SCPA 1802 entitled "Effect of failure to present claim”. Their relevancy will be dealt with below.
SCPA 705 provides as follows: "Where it is prescribed by law that an act must or may be done within a specified time after letters are issued and successive or supplementary letters are issued upon the same estate, the time so specified must be reckoned from the issuing of the first letters, except where it is otherwise specially prescribed by law or where the first or any subsequent letters are revoked as provided in 1413.”
In the instant case, preliminary letters testamentary were issued in the son’s estate by order of the Surrogate on June 11, 1971 to H. Barrie Posner. Plaintiff has chosen to take this to mean the "letters” specified and referred to in EPTL 5-3.3 (subd [a], par [5]). However, when this provision is read in conjunction with SCPA 705, plaintiff’s theory runs into difficulty. The first part of SCPA 705, up to the point of "except where it is otherwise specially prescribed by law or where the first or any subsequent letters are revoked as provided in 1413” creates no problem. But the quoted exception is the cause of the difficulty vis-á-vis plaintiff’s position because SCPA 1413 says that "[wjhere * * * preliminary letters testamentary * * * have been granted and a will is thereafter admitted to probate and letters [testamentary] issued thereupon * * * the decree granting probate must revoke the former [preliminary] letters”.
The expiration of the period of "six months from the date of the issuance of letters” (EPTL 5-3.3, subd [a], par [5]) is easily ascertainable when only one set of letters has been issued. The problem which arises if plaintiff’s theory is deemed cor *961 rect is to determine when the period expires — and, consequently, when distribution may safely be made by an executor —in an estate where preliminary letters testamentary are followed by letters testamentary after probate. The question then posed is: Does the six-month period for the service of the notice of election under EPTL 5-3.3 (subd [a], par [5]) start to run from the date that preliminary letters were issued or does it start anew when the second letters are issued to the successor fiduciary, after probate?
A similar problem arose in the case of presentment of claims to the fiduciary for payment. Originally, SCPA 1802 provided that claims had to be presented within seven months from the date of the issuance of letters. Again the question was presented as to whether the seven-month period commenced from the issuance of preliminary letters or from the issuance of letters, after probate. The problem was resolved by legislative amendment of SCPA 1802 by chapter 15 of the Laws of 1970 which made explicit that the seven-month period was to begin on the date that letters were first issued to any fiduciary, be it a temporary administrator or a preliminary executor and shall not be interrupted by any subsequent issuance of letters. (See McKinney’s Cons Laws of NY, Book 58A, SCPA 1802, Supplementary Practice Commentary by Paul J. Powers, 1969, 1970, p 21.) .
The question immediately arises as to why the Legislature chose to amend SCPA 1802 rather than that which appears to be the more appropriate statute — SCPA 705. The answer is found in the note appended to L 1970, ch 15 which states: "It is deemed preferable to make the amendment to § 1802 rather than to § 705 * * * lest a more general amendment be construed to relate to acts which cannot be effectively done until the validity of a will is determined” (cf. EPTL 5-3.3, 4-1.3, 5-1.1; emphasis supplied).
It is evident from the foregoing that both the Legislature and the Surrogates’ Association are of the opinion that the service of a notice of election under EPTL 5-3.3 (subd [a], par [5]) cannot effectively take place before the admission of the will to probate and the concomitant issuance of letters. This court shares that opinion. It would therefore appear unthinkable to hold a guardian ad litem liable in money damages for his failure to perform an act on behalf of his ward which neither he nor anyone else could effectively have done at the time in question.
*962 THE SETTLEMENT AGREEMENT
The recitals in this settlement agreement, hereinabove referred to, are significant. It is therein stated, in pertinent part:
"Whereas, Julia D. Tate (the mother) also timely filed an election under Section 5-3.3 * * * to take her elective share of the excess [sic] charitable and educational bequest under the purported Last Will and Testament of Nicholas Lee Tate, Deceased; and
"Whereas, Nicholas C. Tate, (the father) did not timely file an election under Section 5-3.3 * * * to take an elective share of the excess [sic] charitable and educational bequest under the purported Last Will and Testament of Nicholas Lee Tate, Deceased.”
Thus, at the outset, one is made aware that the filing of notice by the mother and the nonfiling thereof by the father are facts which are to form the basis or, at least part thereof, for the ensuing agreement.
The agreement, as indicated earlier, then goes on to provide for the withdrawal of objections to the probate of the son’s will filed by the mother and for the assignment of the mother’s elective share under EPTL 5-3.3 to plaintiff herein, as administrator of the father’s estate as well as for the payment to plaintiff by defendant, in his capacity as executor of the mother’s estate, of $25,000. It goes on, further, to provide for the withdrawal of objections filed by the administrator of the father’s estate (plaintiff herein) against the will of the mother and for the withdrawal of objections filed against the son’s will by the father’s guardian ad litem (defendant herein) and, finally, provides that the preliminary executor of the son’s estate will pay to plaintiff, as administrator of the father’s estate, "the elective share of Julia D. Tate (the mother) under Section 5-3.3 * * * of the excess [sic] charitable and educational bequest under the (son’s will)” plus the sum of $25,000.
This agreement is signed by defendant but plaintiff insists that defendant signed only in his capacity as preliminary executor and residuary legatee of the mother’s estate. Nowhere in the agreement does such a limitation appear. The legend "Preliminary Executor and Residuary Legatee” appearing under the line upon which his signature was placed is mere descriptio personae and in no way restricts his being individually bound by the agreement or benefited individually thereby (cf. Litchfield v Flint, 104 NY 543; O’Brien v Jackson, *963 167 NY 31; Williamson v Stevens, 84 App Div 518). The obligations incurred under the agreement were not those of the mother or founded upon any contract she had made. If a suit were to arise in connection therewith against her estate, it would necessarily have to be based on an executory contract made by her preliminary executor — for which he would be liable only individually and not in his representative capacity (O’Brien v Jackson, supra). Obviously, if the intention of the parties was to limit the capacity in which the preliminary executor executed this agreement, appropriate language could (and should) have been employed for such purpose.
Accordingly, the present attempt of the plaintiff to limit the capacity in which the preliminary executor signed is to no avail and this court so holds.
The plaintiff also takes the position that this agreement of settlement did not resolve the "claim” which the father’s estate had for the latter’s share of the excessive educational gift made in the son’s will. The language of the agreement, in this court’s view, at the very least, renders this claim against the defendant guardian ad litem academic.
The agreement, by express language, recites the acknowledgement by all the signatories that the election on behalf of the father was not made and provides for an assignment from the mother’s estate to the father’s estate of the mother’s elective share of the excessive gift made in the son’s will plus two cash payments of $25,000 each — one from the mother’s estate and the other from the son’s estate. For what purpose was the recital made concerning the fact that the father "did not timely and validly file an election under Section 5-3.3” if this fact were not to be treated as part of the quid pro quo for the assignments and cash payments? The fact of the filing or nonfiling of a notice to elect has no bearing upon the issues to be resolved in a contested probate. Thus, the argument that the agreement was intended only to settle the contested probate issues is defeated by the very language of the agreement of settlement itself. The fact that no notice of election was filed on the father’s behalf was well considered by the parties to the agreement and its consequences resolved thereby thus rendering the claim made now academic. Any other construction would render the recital of such fact meaningless — a thought which the court finds absurd under the circumstances present here.
In summary, while the court is not unmindful of the strict *964 duty of allegiance owed by a guardian ad litem to his ward, that duty pertains only to the proceeding then extant and cannot be extended, as plaintiff would here, to matters falling outside the issues presented for resolution in the immediate proceeding then before the court.
In none of the standard texts consulted by the court wherein are discussed the duties of a guardian ad litem (e.g., 1A Warren’s Heaton on Surrogates’ Courts, § 80; 25 CarmodyWait 2d, New York Practice, § 149:232; 1 Harris, New York Estates Practice Guide [3d ed], § 107; 2 Boardman’s Estate Management and Accounting, § 326.01; 2 Weinstein-KornMiller, NY Civ Prac, par 1202.05; 1 Butler, New York Surrogate Law and Practice, §452; 1 Jessup-Redfield, Surrogates Law and Practice, § 293) has the court been able to find any authority to support the theory plaintiff has advanced in this case.
Accordingly, this court finds no cause of action stated and dismisses the complaint herein, with taxable costs and disbursements.