[L. A. No. 2562.   In Bank.—April 7, 1911.]

# In the Matter of the Estate of LELIA BONNER DWYER, Deceased.

ESTATE OF DECEASED PERSON—PROCEEDS OF SALE OF LAND CONTRACTED TO BE SOLD—PERSONAL PROPERTY—DISTRIBUTION ACCORDING TO LAW OF TESTATOR'S DOMICILE.—The purchase price of land in this state which a testatrix domiciled in another state had contracted to sell in her lifetime, and which was collected by her administrator with the will annexed in this state, is personal property, the distribution of which is governed by the law of the domicile of the testatrix.

ID.—CHARITABLE BEQUESTS—LIMITATION ON AMOUNT—WHOLE ESTATE WHEREVER SITUATED TO BE CONSIDERED.—The expression "one third of the estate of a testator," as used in section 1313 of the Civil Code, limiting charitable bequests or devises to that amount, means one third of the entire distributable estate of the testator wherever located; it does not mean one third of the estate distributable alone in this state.

ID.—WHOLE ESTATE IN CALIFORNIA DISTRIBUTABLE TO CHARITY—CHARITABLE BEQUESTS LESS THAN ONE THIRD OF AGGREGATE ESTATE.— Where a testatrix died domiciled without this state, leaving to trustees for charitable purposes the whole of that portion of her estate which was subject to administration under the laws of this state, the trustees are entitled to the distribution of the whole thereof if its value, together with the value of the estate distributable elsewhere to charity, did not exceed one third of the entire distributable estate of the testatrix wherever located.

ID.—LIMITATIONS ON CHARITABLE DISPOSITIONS.—There is no limitation under the laws of this state, except as prescribed by section 1313 of the Civil Code, upon the right of a person to dispose of his property in favor of charitable purposes.

ID.—CHARITABLE DISPOSITIONS ARE FAVORED.—Dispositions to charity are looked upon with favor and the courts will uphold all such gifts, whether made by a donor in his lifetime or by a testator, when it can be done consistently with the rules of law.

ID.—PURPOSE OF LIMITATION ON CHARITABLE BEQUESTS.—Section 1313 of the Civil Code was not enacted for the public good or as a matter of state polity, but for the benefit exclusively of the heirs at law, and as a protection against hasty and improvident gifts to charity by a testator of his entire estate to the exclusion of those who in the judgment of the legislature had a better claim to his bounty.

ID.—ONE THIRD OF ESTATE DISTRIBUTABLE TO CHARITY.—Under the law of this state, it is only one third of the distributable assets of the estate of a testator, after payment of debts and charges of administration, which can be distributed to charity.

ID.—DISPOSITION OF PROCEEDS OF LAND—EXPENSES OF SALE TO BE DEDUCTED.—Where a testator devises to charitable purposes the proceeds of certain real estate it is only the net proceeds, after deducting the expenses of effecting its sale, which can be so distributed.

APPEAL from a decree of the Superior Court of Los Angeles County distributing the estate of a deceased person. James C. Rives, Judge.

The facts are stated in the opinion of the court.

E. W. Camp, Benjamin E. Page, and A. H. Van Cott, for Appellants.

George J. Leovy, and Hunsaker & Britt, for Respondents.

Henry W. O'Melveny, O'Melveny, Stevens & Millikin, and Denis & Loewenthal, for Administrator, etc.

LORIGAN, J.—This appeal is taken by the heirs at law of the deceased from a portion of the decree of distribution in her estate which distributes to the trustees of the "J. M. Bonner Memorial Home" the gross proceeds of the sale of a certain tract of land in Los Angeles County.

The principal provisions of the will of testatrix, and the various matters pertaining to the administration of her estate, are set forth in the opinion this day filed on the appeal of the trustees of the Memorial Home from another portion of this same decree (Estate of Dwyer, (L. A. No. 2569, ante, p. 664 [115 Pac. 235]), but for the purpose of considering the points made on this present appeal some of them will be briefly recited.

The testatrix died in New Orleans in June, 1905, a citizen of and domiciled in Louisiana, and leaving a will which was duly admitted to probate in New Orleans in the year mentioned and letters thereon issued. She left real and personal estate in Louisiana and in Los Angeles in this state, and real

property in Alabama and Texas. Her will, after providing for the payment of certain specific legacies, directed that all her real estate (except some lots in New Orleans) should be sold by her executor, the special legacies, which were expressly charged upon said real estate, paid therefrom, and bequeathed "the rest and residue of the proceeds of said real estate so to be sold to (certain persons named as trustees and hereafter to be referred to as the trustees of the Home) in trust to found and maintain in New Orleans a home for aged and infirm men to be called the "J. M. Bonner Memorial Home." Her husband, Alexander J. Dwyer, was made her "universal residuary legatee." He predeceased her about a year but she made no change in her will as to the residuary bequest so that appellants here, who are conceded to be her heirs at law, were entitled to have distributed to them any property which should fall into the residuum of her estate.

In August, 1905, the will of the testatrix, theretofore admitted to probate in New Orleans, was admitted to probate in the superior court of Los Angeles County, California, as a foreign will and letters of administration with the will annexed were issued. Administration of the estate in Louisiana was closed and the administrator discharged in 1906, since which time there has been no administration of the estate pending anywhere except in this state.

The only real property in this state of which the testatrix died possessed was a ranch in Los Angeles County consisting of one hundred and seventy acres of land. By an order of court this land was sold by the administrator for $20,250 and the sale confirmed in 1907, there being allowed and paid as a part of the expenses of the administration of the estate, and not charged against the purchase price of the ranch, a commission of $1,012.50 for effecting the sale and one hundred dollars for a certificate of title.

In 1909 the administrator with the will annexed filed his petition for distribution asking that the estate be distributed to such persons as the court should deem entitled thereto.

While the estate to be distributed amounted, including the $20,250 gross proceeds of the sale of the ranch, to $135,296.64, practically all in money and securities, the only portion thereof subject to distribution under the laws of this state was the proceeds of the real estate which had been sold by

order of the probate court. The rest of the estate consisted of the purchase price of land in this state which testatrix had contracted to sell in her lifetime but which, on account of protracted litigation involving the validity of the contract of sale (see *Estate of Dwyer*, (L. A. No. 2569), *ante*, p. 664 [115 Pac. 235]) was not collected until after the close of the domiciliary administration of her estate in Louisiana. It was collected by the administrator here, but being personal property, the distribution of which was governed by the law of the domicile of the testator and which would have been transmitted to the administrator in Louisiana to be distributed there had that administration not been closed, the court here in the ancillary administration properly distributed it to the heirs at law of the testatrix in accordance with the law of Louisiana *(Estate of Apple,* 66 Cal. 433, [6 Pac. 7]; *Collins* v. *Maude,* 144 Cal. 289, [77 Pac. 945]).

As to the proceeds of the sale of the ranch which, as we have said, was the only portion of the estate of the testatrix subject to administration under the laws of this state, cross-petitions for the distribution thereof were presented to the superior court by the heirs at law and the trustees of the Home. The heirs at law claimed that they were entitled to distribution to them of two thirds of the proceeds under section 1313 of the Civil Code limiting the disposition which a testator may make of his estate in favor of charity to one third thereof. The trustees claimed to be entitled to the entire gross proceeds of the sale, which claim the court sustained and ordered distributed to them that entire amount. This appeal involves the correctness of that order of distribution.

Upon the hearing of the petition for distribution in the superior court it was shown that there is no limitation in Louisiana upon the amount of property which a testator may leave to charity, except where he leaves a father, mother, or children. The testatrix here left none, and under her situation in that respect, by the law of Louisiana she might have left her entire estate to charity. It was further in evidence that under the administration of the estate of testatrix in Louisiana and the other states, there was distributed to the heirs at law $234,778.43 aside from the amount distributed to them here; to the legatees forty thousand dollars, and to

the trustees of the Memorial Home $126,165.92, and it was conceded that the sum distributed as aforesaid to the trustees of the Memorial Home, together with the $20,250, the proceeds of the ranch distributed by the superior court of Los Angeles, and which is in question here, amounted to less than one third of the whole distributable estate of the testatrix considered as an entirety.

Proceeding now to the merits of the appeal. The principal question involved therein is as to the construction which is to be given to section 1313 of our Civil Code which declares that no devise or bequest of any estate, real or personal, to any charitable or benevolent society or corporation or to any person or persons, in trust for charitable uses, shall collectively exceed "one third of the estate of the testator leaving legal heirs," and further, declaring that all disposition of property contrary thereto shall be void and go to the residuary legatees, devisees, next of kin, or heirs according to law.

In distributing to the trustees the entire proceeds of the sale of the ranch the superior court construed the term "one-third of the estate of the testator" as used in section 1313 with reference to the proportion thereof which was disposable to charity, as meaning one third of the entire distributable estate of the testator wherever located; that although the testatrix died domiciled without the state and the larger proportion of her estate was distributed in foreign jurisdictions, still, if the estate distributed elsewhere to charity, and the estate here—the proceeds of the ranch alone—coming within the terms of the charitable bequest distributable here, did not exceed one third of the entire distributable estate of the testatrix wherever located, the trustees were entitled to the whole proceeds of the sale of the ranch; and as it was not only conceded, but proven, that with distribution here of the proceeds of the sale of the ranch to the trustees of the Home added to the amount elsewhere distributed to them the charitable bequest would receive less than one third of the entire estate of the testatrix, a proper construction of section 1313 required the entire proceeds of the ranch to be distributed to the charity.

Appellants insist, on the other hand, that the "estate of the testator" mentioned in section 1313 means the estate located in this state over which the superior court has power and juris-

diction, and none other; that in determining the amount of the estate distributable here under the charitable devise as the only estate over the testamentary disposition of which the law of this state had control and jurisdiction was the real estate of testatrix situated here or its proceeds and nothing else, the superior court could under section 1313 only distribute one third of that property considered alone to the charity and should have distributed the remaining two thirds thereof to appellants as heirs at law of testatrix.

This is the first time this precise question has been presented for consideration to this court, and the correctness of the decree of distribution involved, depends upon the meaning which is to be given to the term "estate of the testator" as used in section 1313. Is it the estate here which alone can be taken into consideration in determining the amount which a non-resident testator may devise to charity, or is it the entire estate—that distributed elsewhere together with that distributed here—which shall be made the basis of calculation?

The solution of this question in our judgment is to be determined by a consideration of the legislative intent as disclosed by the entire section; the purpose which the legislature intended to accomplish by its enactment.

As a general proposition the right of a non-resident testator to dispose of property in this state is recognized and may be exercised under no greater testamentary restrictions than apply to a disposition of it by a domiciliary testator. Our law recognizes the validity in this state of wills made by non-residents, provides for their probate here and for administration and distribution of property owned in this state by the testator. In the administration of such estates here as in those of domiciliary testators, we endeavor to carry out the intention of the testator expressed in his will concerning the disposition of his estate and sustain trust provisions of the will, particularly where such provisions are valid both under the law of the domicile of the testator and under the law of this state.

There is, of course, no question as to the validity of the bequest by the testatrix to the trustees of the Home. It is valid, both under the laws of Louisiana and this state. The only question is whether in measuring the one third of the estate distributable in favor of that charity the court here

under section 1313 shall take into consideration the estate of the testator in this state only, or the entire estate wherever distributed.

The general rule, undoubtedly is, and is so declared by section 1376 of our Civil Code, that the testamentary disposition of property in this state is governed by the law of this state. Taking this rule into consideration, appellants insist that when section 1313 speaks of "the estate of the testator" in connection with the inhibition of disposition of more than one third of it to charity, the estate mentioned must be construed to be the estate of the testator in California only and over which the law of this state has alone control. But this conclusion does not necessarily follow from a consideration of the rule. Giving the rule its full force it does not answer the inquiry as to what is meant by the "estate of the testator" as used in the section, a proportional part of which alone can be disposed of in favor of charity. The disposition of the estate must, it is true, be governed by the law of this state, but the inquiry is, What is the law in that respect? If the legislature in the enactment of section 1313 intended to limit the proportion of the estate of a testator which could be disposed of in favor of charity here to the estate alone under distribution in this state, then the trustees of the home were only entitled to a distribution of one third of the proceeds of the sale of the real property. If, on the other hand, the words "estate of the testator" used in the section referred to the estate generally, then the distribution of the entire proceeds of the sale of the ranch to the trustees of the Home, as it would not exceed one third of the entire distributed estate of the testator wherever situated, was properly made. So, as the term "estate of the testator" may have a limited or enlarged significance, it is necessary in order to determine in what sense the term is used in the section, to examine into the intent and purpose of the legislature in the enactment of the section so as to apply the law of this state to dispositions in favor of charity as the legislature intended.

Now, as to such legislative intent. There is no limitation under the laws of this state, except as prescribed by section 1313, upon the right of a person to dispose of his property in favor of charitable purposes. He may by gift in his lifetime devote all his property thereto. He has a legal right

to do so. He may with equal legal right dispose by will of all his property in favor of charities provided he leaves no heirs at law. It is only when he leaves such heirs that his power of disposition by will is restricted. But this is not by reason of any public policy of this state against dispositions in favor of charity. In fact, the state has no such public policy. It is well settled here that dispositions to charity are looked upon with favor and the courts will uphold all such gifts whether made by a donor in his lifetime or by a testator, when it can be done consistently with the rules of law. The theory of section 1313 is not to prevent charities from receiving testamentary gifts of property. It is not a mortmain statute; not an expression of a policy of the state against the accumulation of vast properties or the centralization of wealth *in mortu manu*. It was not designed to operate upon the capacity of corporations or institutions or individuals to take charitable testamentary gifts but solely as a limitation on the power of a testator to make them when he had legal heirs. The purpose of the section was remedial; to prevent what was deemed a wrong and injustice to those who should naturally be the recipients of the bounty of a testator—his heirs at law. It was not enacted for the public good or as a matter of state polity, but for the benefit exclusively of those named in it—the heirs at law—and as a protection against hasty and improvident gifts to charity by a testator of his entire estate to the exclusion of those who in the judgment of the legislature had a better claim to his bounty. As then the section in question was not enacted as declaratory of any public policy of this state relative to charitable dispositions by will, but was enacted exclusively for the protection of the heirs at law of a testator, there is no reason why it should be held that the estate of the testator mentioned therein of which a limited disposition to charity may be made, means the estate of the testator distributable alone in this state. On the contrary, as the legislative intent was only to prevent a disposition in excess of one third of the estate of the testator where he left heirs at law, and was solely to secure their rights in any excess disposed of over that proportion, it was entirely immaterial in the legislative mind where or how the heirs received the proportion of the estate to which they were deemed entitled as long as they obtained it. In requiring

ancillary administration in this state we do so for the benefit of creditors of the decedent and claimants here. When their claims have been satisfied as far as the distribution of the property of the estate located here is concerned, distribution thereof is made in conformity to the terms of the will and the intention of the testator unless contrary to some provision of the law of this state. In making such distribution where bequests to charity are involved, there is no principle of construction, or any rule of public policy in this state, or any rule of law, which requires us to hold in determining the amount of the estate of a non-resident testator distributable to charity under the code section in question, that the estate of the testator here can alone be taken into consideration. Such a construction would be arbitrary, and not in harmony with the legislative intent and purpose. Its effect, too, would be, in many instances at least, to permit the heirs at law, under distribution in foreign jurisdictions and here, to receive an amount largely in excess of two thirds of the aggregate of the estate of the testator and contrary to his intention.

From these considerations we are of the opinion, therefore, that the term "estate of the testator" employed in the section means, for the purpose of determining the amount of the estate here distributable to charity, not the estate alone over which the court here has control, but has relation to the aggregate estate wherever situated or distributed, and that where it can be shown, as it is shown here, that in the administration of the estate in other jurisdictions the heirs at law have already received two thirds of the estate of the testator, or that of the estate in this jurisdiction, an amount less than two thirds of the distributable estate here, added to what has already been received by them in other jurisdictions will give them two thirds of the estate of the testator, they will not be allowed to take in this jurisdiction an amount in excess of what is necessary to make up the two thirds of the estate to which in the legislative judgment and the intention of the testator, they are entitled, and which, if it were permitted, would give them more than two thirds of the aggregate estate of the testator.

The only authority to which our attention is directed on either side of this controversy which squarely applies to the

question here involved is the case of *Paschal* v. *Acklin*, 27 Tex. 173. In that case, Isaac Franklin, a testator domiciled in the state of Tennessee, died leaving a widow and children. By his will, after making bequests to his wife and children, he devised all his "property, real and personal, of whatever kind or nature, that is situated in the states of Tennessee and Mississippi, or any other common law state, where trust estates can be created . . . and the rest and residue of my estate wherever situated" to his two brothers in trust to erect, endow, and maintain an academy or seminary of learning on the plantation of the testator in Tennessee. At the time of his death testator left real property in Texas. The law of Texas provided that a testator leaving children him surviving could not dispose of more than one fourth of his estate to other than the children. The Texas supreme court, after deciding that Texas was a "common law state" where trust estates could be created within the terms of the devise in trust under the will, proceeded to consider, among other questions, whether, in ascertaining the portion of his estate which the testator could leave to charity under the testamentary restrictions of the law of Texas, regard should be had only to such estate as might be in Texas, or did it apply to the whole estate of the testator wherever situated. It was held that the whole estate wherever situated must be considered. The court said: "It is also insisted by the appellees, and was so ruled in the district court, that Isaac Franklin's will is inoperative and void in this state, to the extent of three fourths of his estate, because, as they allege, it contravenes the provisions of our former statute of wills, which forbid a parent depriving his children by will of more than one fourth of his estate. . . . On the other hand, the position assumed by appellants, that the court, in applying this statute to the will, can only take into view the property of the testator situated in this state, is equally fallacious. The only limitation upon the right of the owner to dispose of his property by will has reference to the proportional part of the value of his estate. In other respects his discretion is unshackled. The authority to dispose of his property by will is general; the limitation or qualification of this right is special and particular. In the nature of things, it is impossible that a part of each specific article of property should be allotted to the children. To deprive the testator of the privilege

CLIX Cal.—44

of selecting the item of property for bequest, would often, if not generally, take from him the incentive for making it. The object of the law was to secure to children a just and reasonable portion of their parents' estate. If they received the portion to which the law declared they were entitled, it was immaterial where or in what they received it. It is not to be understood from this that there may not be cases in which our courts would refuse to send our citizens abroad, to encounter difficulties and uncertainties in obtaining their portion of their parents' estate in a foreign tribunal, to enable the devisees or legatees to secure the full amount of their bequests here. The question presented in this case is, can the children, or those claiming under them, if they have already received their legitimate portion of the entire estate, claim a like proportional part of the property in this state, simply because the portion which they have received was not within its limits, or within the jurisdiction, or under the control of our courts? To answer in the affirmative would be to give the statute in question a construction altogether foreign to its spirit and purpose, as well as to violate a fundamental principle in this department of jurisprudence."

We make no doubt upon the correctness of the rule as laid down in the above case and that it is applicable to our statute. It seems to be the only construction which will permit the intention of a testator to be carried out as to the portion of his estate which he may devote to charity at the same time that it gives to the heirs at law all that in the judgment of our legislature they should have and prevents them from taking a proportion in excess of what they are entitled to.

There is nothing in the *Estate of Peabody,* 154 Cal. 173, [97 Pac. 184], cited by appellants, which decides anything contrary to the conclusion we have reached. There the devise was to charity, and the only two questions involved were as to the validity of the trust clause, tested by the rule of the *Estate of Fair,* 132 Cal. 523, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000], and subsequent cases, as to trusts to convey, and the application of the doctrine of *cy pres* to the charitable devise there under consideration. Denying the application of the rule in the Fair case to the trust in question, this court then proceeded to consider the application of the *cy pres* doctrine under the claim of appellant that the estate in

California devised to charity was so small that it would be in-
adequate to accomplish the purpose designed by the testatrix,
and should be held void on that account.  In disposing of this
·point, the court, among other things, said: "We do not know
the value of the house and lot in St. Louis, nor whether, under
the law of Missouri, the whole devise is effectual as to that
property.  The mere fact that one third, only, of the California
property can be devoted to the establishment of 'The House of
Rest,' and that hence the establishment may be much smaller
than the testatrix intended, does not make the devise invalid."
It is on this language used in the quoted portion of the opinion
upon which appellants here base their claim that it is a decision
of this court to the effect that in determining the one third of
the property which can be distributed to charity here, the
property in this state alone can be taken into consideration.
But in this Peabody Estate appeal there was no question pre-
sented to this court for consideration as to whether in de-
termining the one third of the estate of a testator which should
be distributed to charity one third of California property only
should be taken into consideration, or one third of the entire
estate wherever situated.  The attorney for the appellant in
that case conceded that one third of the California property
only could go to charity, so that the question involved here
could not arise in that case, nor did the court undertake to
determine it.  The language there used is referable only to the
matter which was under consideration.  The court had no data
under which it could know anything about the estate of the
testator elsewhere than in this state; it did not know the value
of the property devoted to charity in Missouri, or whether the
devise there was valid, or whether any distribution of the estate
had been made there, and under the concession of counsel for
appellant, that only one third of the property in this state
could be devoted to charity, was dealing only with the question
presented,—namely, whether as the one third of the estate
here was insufficient to carry out the general scheme of the
testatrix to establish a "Home of Rest" as she designed it,
should the devise for that reason be declared invalid?  The
court, applying the *cy pres* doctrine held that it was not.  That
was all that was decided, and as the language of the court was
addressed to this sole proposition, it cannot be construed into a
declaration that in determining the amount which shall be

available for charitable purposes of property situated in this state, the court shall take into consideration the property here alone, and not the entire estate wherever situated. No such question was involved in the Peabody case, and nothing respecting it was there decided.

In reaching our conclusion in this matter we give due consideration to the suggestion of counsel for the appellants as to the difficulties and embarrassments which may attend the distribution of property of the estate here under our construction of the code provision. These are, to state the principal ones urged, that where a testator leaves property here and in other states, administration may be pending elsewhere at the same time that it is pending here; that when the ancillary administration here is ready to be closed, administration elsewhere may still be pending, and the court here cannot know how the estate there will be distributed; that administration here should not be delayed for the sole purpose of ascertaining how and to whom distribution of the estate in other jurisdictions may be made; and that unless the administration is delayed here · until other administrations are closed, the court here will not be able to take into consideration the value of the estate distributed elsewhere and the manner of its distribution, for the purpose of determining what amount of the estate here shall be distributed to charity and what to the heirs at law. But conceding that such conditions may exist elsewhere when estates are ready for distribution here, this would not affect the correctness of the rule itself as a rule of distribution. They would only render the rule difficult of application. The natural and proper desire and disposition of all beneficiaries under a will, or the heirs at law of a testator, to obtain their share of the estate at the earliest moment they are entitled to it can be safely relied on to prevent any delays in the speedy distribution of the estate of a testator, in whatever jurisdiction it may be situated. But if such difficulties may sometimes exist, none of them are presented here. In this particular estate the domiciliary administration in Louisiana and the ancillary administrations in other states were closed and the only administration pending anywhere was in this state. Here the value of the property distributed elsewhere and how and to whom it was distributed was shown. The rule announced under these circumstances was of ready application. It was a matter of

mere mathematical calculation for the court to ascertain the amount of property under its control here, which, together with the amount distributed elsewhere, would give to the heirs at law the two thirds of the estate of the testatrix to which they were entitled, and allow distribution to charity of the rest, which, in itself, would not bring the bequest to charity up to one third of the aggregate distributable estate of the testatrix to which it was entitled.

Should, however, the conditions of uncertainty suggested by appellants exist when an estate here is ready for distribution; that at that time the value of the estate elsewhere and the manner in which it has been distributed cannot be ascertained, the court necessarily could only take into consideration in determining the respective amounts of the estate which should be distributed under section 1313 to charity and to the heirs at law the estate under its control here.. But this, as we have said, is not because a proper construction of section 1313 does not require the court to take into consideration if it can the amount of the estate of the testatrix wherever distributed in determining the amount distributable to charity of the estate here, but because, in the absence of knowledge as to the value of the estate distributed elsewhere, or how distributed, it is impossible to take the entire estate into consideration in making distribution of the estate here.

Under the construction which, in our opinion, must be given to the term "estate of the testator" as employed in section 1313 with reference to the amount of property which may here be distributed to charity thereunder, the superior court properly distributed to the trustees of the Memorial Home the proceeds of the ranch, and there only remains for consideration the further point made by appellants that if the trustees were entitled to the proceeds as a whole, the court should not have distributed to them the gross proceeds, but only the net proceeds thereof. This point is based on the fact that the court allowed, for effecting a sale of the property, under its order, a commission of $1012.50, and one hundred dollars for a certificate of title. These expenses attending the sale were not deducted from its proceeds, but were allowed and paid as part of the general expense of administration of the estate, and the gross proceeds of the sale distributed to the trustees of the home. We think the proceeds of the sale should have been

charged with the expense attending the sale and only the net proceeds distributed to the trustees. Several reasons might be assigned in support of this conclusion, but one will suffice. It is the settled law in this state that it is only one third of the distributable assets of the estate of a testator, after payment of debts and charges of administration, which can be distributed to charity. (*Estate of Hinckley*, 58 Cal. 457; *Pearsons Estate*, 98 Cal. 603, [33 Pac. 451].) This being true, it necessarily follows that it is only the proceeds of the sale of the ranch, after deducting the expenses of effecting its sale—the net proceeds thereof—which can be distributed to charity.

For this error in distributing to the trustees of the Home the gross instead of the net proceeds of the sale of the ranch, that portion of the order appealed from is reversed, with directions to the superior court to modify that portion of the decree appealed from, by distributing to the trustees of the Home the net proceeds of the sale, amounting to $19,137.50, and as it appears that the heirs at law would be entitled to have distributed to them the $1112.50, representing the amount in excess of what should have properly been distributed to the trustees of the Home, the court shall further modify the decree of distribution so as to distribute to them that amount, and, as so modified in the particulars stated, the decree, as far as it is affected by this appeal, will stand affirmed. Appellants are entitled to their costs on appeal.

Henshaw, J., Shaw, J., Angellotti, J., Sloss, J., and Melvin, J., concurred.