30 Cal.2d 549 (1947)
Estate of JOHN D. BARTER, Deceased. THOMAS H. KUCHEL, as Controller, etc., Appellant,
v.
FIRST TRUST AND SAVINGS BANK OF PASADENA et al., Respondents.
Supreme Court of California. 
Sept. 10, 1947.
 James W. Hickey, Inheritance Tax Attorney, Raymond G. LaNoue, Deputy Inheritance Tax Attorney, Donald R. Peck and Morton L. Barker for Appellant.
 Boyle, Holmes, Fry & Garrett, John W. Holmes and S. T. Hankey for Respondents.
 SPENCE, J.
 The State Controller has appealed from an order of the probate court of Los Angeles County exempting "the residue of [this] estate" from the payment of an inheritance tax. Appellant challenges the propriety of this exemption under section 6, subdivision (1) (b), of the Inheritance Tax Act of California (Stats. 1935, p. 1266; 3 Deering's Gen. Laws, Act 8495), but the determinative factors of record herein do not sustain his position.
 The case is submitted upon an "agreed statement on appeal."
 John D. Barter died testate on October 15, 1941, a resident of Los Angeles County. The residuary clause of his will provided as follows: "The balance of my property I bequeath to the British Government to be administered & applied for *552 the benefit of British refugee children or similar purpose." Upon request of the executor for instructions, the probate court decreed that the quoted provision "constituted and created a valid charitable trust for the use and benefit of the class of persons therein described, and that upon application therefor at time of distribution of the assets of said estate the court would appoint a trustee to receive and administer the assets of said charitable trust." That decree became final.
 Thereafter the probate court made its order appointing the Combined British Charitable Fund, a California corporation "exclusively engaged in or devoted to charitable work," to "fill the vacancy in said trusteeship caused by the incapacity of the British Government to so act." That order likewise became final.
 In due course the inheritance tax appraiser filed his report, in which the "residuary estate" of decedent "was taxed to the British Government and a tax assessed against said residue in the sum of $4,380.93." The executor filed objections to that report and a hearing was had. In resolving the issue so presented with respect to the inheritance tax computation, the probate court concluded that the residue of the estate did not pass to the British Government but was transferred to the Combined British Charitable Fund, the California charitable corporation; that such transfer was not subject to tax under the law; and that the tax of $4,380.93 was erroneously fixed in the inheritance tax appraiser's report and should not have been assessed. Accordingly, it was ordered that the tax report be modified by striking therefrom the assessment upon the residuary estate. From such order the state controller has appealed, and he is resisted herein by the Combined British Charity Fund as well as by the executor.
 [7] The Inheritance Tax Act in force at the date of the testator's death provided that a tax shall be "imposed upon the transfer of any property, real or personal, or of any interest therein or income therefrom, in trust or otherwise, to persons, institutions or corporations, not hereinafter exempted. ..." (Inheritance Tax Act of 1935, 2, Stats. 1935, ch. 358, pp. 1266, 1268; as amended by Stats. 1941, ch. 177, p. 1220; 3 Deering's Gen. Laws, Act 8495; emphasis added) and defined the word "transfer" to "include the passing of property or any interest therein, in possession or enjoyment, present or future, by inheritance, descent, devise, succession, bequest ... or exempt property orders in probate. ..." *553 (Inheritance Tax Act of 1935, 1, subd. (3), Stats. 1935, ch. 358, pp. 1266, 1267; 3 Deering's Gen. Laws, Act 8495; emphasis added.) The exemption allowance under said act, so far as here pertinent, reads as follows: "All property transferred to ... any society, corporation, institution, or association of persons exclusively engaged in or devoted to any charitable, educational, public, or other like work (pecuniary profit not being its object or purpose); or to any person, society, corporation, institution, or association of persons in trust exclusively for or to be devoted exclusively to any charitable, educational, or public purpose, by reason whereof any such person or corporation shall become beneficially entitled in possession or expectancy to any such property or to the income thereof, shall be exempt; provided, however, that such society, corporation, institution or association be organized solely for charitable, educational, public or other like work under the laws of this State or of the United States, or that the property transferred be limited for use within this State; ..." (Inheritance Tax Act of 1935, 6, subd. (1)(b), Stats. 1935, ch. 358, pp. 1266, 1274; as amended by Stats. 1939, ch. 694, p. 2210; Stats. 1941, ch. 833, pp. 2387, 2388; 3 Deering's Gen. Laws, Act 8495; emphasis added.) The above italicized language sustains the tax-exempt ruling with respect to the transfer of the residuary estate herein.
 [2] In his attack upon the premise of the exemption, appellant at the outset queries the scope of the allowance under the terms of the quoted proviso. He argues that the alternative conditions expressed therein should be read distributively so as to differentiate them in application between an outright transfer and a transfer in trust. Thus, he urges that the consideration of whether or not the recipient charitable corporation is "organized ... under the laws of this State or of the United States" relates wholly to the former as distinguished from the latter type of testamentary disposition of property, so that the transfer in trust achieves a tax-exempt status only if limited to "use within this State." Were such concept of the proviso adopted, appellant's tax claim would prevail without further argument, for the testator's bequest of his residuary estate "for the benefit of British refugee children" has no correlating limitation to "use within this State." Appellant's argument rests upon the restricted analysis of the proviso as made in the dissenting opinion in Estate of Irwin, 196 Cal. 366, 379-380 [237 P. 1074], a construction *554 which the majority of the court demed inconsistent with the spirit and tenor of the statutory exemption.
 The Irwin case concerned the inheritance tax liability of a charity foundation to be formed in pursuance of the testatrix' will for the purpose of administering a trust fund, the net income of which was to be paid to "such charitable uses, including medical researches and other scientific uses, designed to promote or improve the physical condition of mankind, as [the trustees] in their judgment may [deem] worthy of support ... as [they] may exist in the Hawaiian Islands or the State of California." (196 Cal. 370.) Obviously, this testamentary transfer in trust did not qualify for exemption under the second alternative condition in the proviso regarding limitation "for use within this State," but it was held to comply with the first in that it was to be administered by "an association organized or existing under the laws of this state although its formal functioning was consummated subsequent to the time of the death of the decedent." (196 Cal. 373.) Correlative to that conclusion is the following statement at page 373: "The law should be liberally construed so as to favor and encourage such charitable foundations and should not be construed so as to lay the heavy burden of inheritance taxes upon the property devoted to such uses and thus, to the extent of such burden, hamper and limit the resources of the trust intended for such beneficial uses. (Citing authority.)" While the dissenting opinion adopted a "narrow interpretation" of the qualifying language in denying the property transfer the benefit of the exemption because the "association [was not] actually engaged in or devoted to a charitable work and ... existing under the laws of this state" at the time of the testatrix' death (196 Cal. 379-380), the dissenting opinion no less than the majority opinion in the Irwin case considered the questions of the tax liability of the trust transfer in the light of application of either of the alternative conditions stated in the proviso. Such feature of agreement between the two opinions accords with the board and comprehensive design of the statutory language evidencing the intent of the Legislature to favor and encourage "charitable" and kindred transfers of property by providing a tax exemption therefor so as not to diminish their ultimate benefits, and in line with such policy there would be no logical basis for predicating the exemption alolwance to a transferee "organized solely for *555 charitable, educational, public, or other like work under the laws of this State or of the United States" on whether or not the property transfer was outright or in trust. Rather it would appear that it is the character of the transferee, not the character of the transfer--whether "in trust or otherwise"--that is the first consideration under the terms of the proviso; and it is only in the event that the transferee does not so qualify in purpose and place of organization that the restriction as to "use within this State" becomes material. Such view coincides with the principle of liberal construction of exemptions in favor of charitable organizations. (Cooley, Taxation, 4th ed., vol. 2, 673, p. 1415; Sutherland, Statutory Construction, 3d ed., Horack, vol. 3, 6702, p. 296.)
 There now remains for consideration the eligibility of the "residue of [this] estate" for the inheritance tax exemption by virtue of the first alternative condition in the proviso above quoted. Appellant maintains that settlement of this point depends on the testator's will rather than the probate court's order declaring the identity of the trustee. Accordingly, it is his theory that the transfer of the residue to the British Government was effected at the moment of the testator's death and of necessity the transfer tax thereupon became payable; that the right of the state to collect a tax on the residuary estate attached at the same time, and the probate court's action in "diverting the funds" cannot affect the assessment. As authority for this position, he cites the cases of Estate of Kennedy, 157 Cal. 517 [108 P. 280, 29 L.R.A.N.S. 428], and Estate of Steehler, 195 Cal. 386 [233 P. 972], where it was held that in the absence of express statutory provision, homesteads and family allowances, as property distributions made in the probate proceeding pending the administration of the estate and not passing by will or by the intestate laws of the state, were not subject to the burdens of the inheritance tax. But no such consideration of the severance and "diverting" of funds from the inheritable estate arises here where the probate court, in the exercise of its "control" over the decedent's proprty "for the purposes of administration, sale or other disposition" (Prob. Code, 300), made its order effectuating the testamentary trust.
 [3] It is the duty of the court so to interpret a will as to carry out the ascertainable intention of the testator, provided no law is violated thereby. [4] If the testamentary language evidences a plain intent to create a trust with respect *556 to any portion of the decedent's estate, equity will not permit the trust to fail for want of a trustee but will appoint one. (Estate of McCray, 204 Cal. 399, 402- 403 [268 P. 647]; Estate of McDole, 215 Cal. 328, 332-333 [10 P.2d 75].) [5] Where the nominated trustee refuses to act, dies or is incapacitated for such office, "a court of chancery will execute [the trust]" by appointing a trustee. (Smith G. Davis, 90 Cal. 25, 33 [27 P. 26].) As is aptly said in Fatjo v. Swasey, 111 Cal. 628, at page 635 [44 P. 225]: "... no rule is better settled than that 'courts of equity have inherent jurisdiction over all matters of trusts and trustees, and they never allow a trust to fail for want of a trustee.' (Perry on Trusts, sec. 240.)"
 [6] The beneficiaries of the testamentary trust herein are an indefinite class of persons, that is, British refugee children. They are essentially the devisees under the will (Estate of Loring, 29 Cal.2d 423, 430 [175 P.2d 524]) and the British Government was the designated trustee. But the British Government having been found to be incapacitated to act as such trustee, it was incumbent upon the probate court to fill the vacancy so resulting and to appoint a trustee which could qualify. [7a] Pursuant to such duty, the probate court designated the Combined British Charitable Fund, a California corporation. It qualified and the transfer of the residuary estate was to such trustee. Such residue did not for one moment pass to the British Government; that entity could not and did not make any attempt to assume the testamentary office. Hence, in no view of its rights or of its relation to the beneficiaries of the trust does it necessarily follow that the residuary estate was transferred to the British Government, but rather such estate passed by due and proper order of the court to a charitable corporation of this state qualified to administer a charitable trust. That event exempted it from liability within the scope of the inheritance tax law.
 [8] The inheritance tax is not a tax on the property of the decedent but is an excise imposed on the privilege of succeeding to property upon the death of the owner. (Estate of Watkinson, 191 Cal. 591, 598 [217 P. 1073]; Estate of Letchworth, 201 Cal. 1, 5 [255 P. 195]; Cohn v. Cohn, 20 Cal.2d 65, 67 [123 P.2d 833].) In the light of such definition, the assessment of the tax against a trust estate is not to be governed solely by the language of the will, but also by such events as affect the beneficial succession to the estate. Apt illustration of this principle is found in the case of Estate of Rath, 10 Cal. *557 2d 399 [75 P.2d 509, 115 A.L.R. 836], where a trust or charge extrinsic to the will determined the devisees' beneficial enjoyment of the property and gave them a greater exemption status in relation to the inheritance tax. After observing at page 405 that the "amount of the tax is proportionate to the benefit received" and that "transfers by instruments which are nontestamentary, as well as those which arise by will, or by intestate succession" affect the rate of taxation, the court concluded the point at page 406 with the statement that though "distribution may be ordered only in accord with the instrument which is testamentary," yet "for purposes of fixing the inheritance tax beneficial succession is the measure." Likewise, in Estate of Belknap, 66 Cal.App.2d 644 [152 P.2d 657], the same principle was applied to exempt the beneficiary from payment of an inheritance tax on certain annuity bonds purchased by the executor pursuant to instructions in the will but in fulfillment of the testator's obligations as fixed by the property settlement agreement. The "benefit received" came not from the will but from an extrinsic agreement to which the probate court properly gave due regard in fixing the transfer tax. [7b] So it is here where an event dehors the will--the order of the probate court appointing the trustee--determined the transferee succeeding to the residuary state and effected the transfer of the trust property. The benefit of administring such estate thereupon was correlated with the appointed California charitable corporation and the exemption allowance provided by statute. Since no such benefit passed to the British Government, there would be no basis for assessing the transfer tax against it.
 [9] A testamentary trustee is not automatically qualified as such by virtue of his nomination by the testator. Such designation by the testator is in effect nothing more than a recommendation. While the testamentary declaration of the subject matter of the trust, the purpose thereof, and the persons beneficially interested therein determines the fact of the creation of the trust, the identity of the trustee is not determined prior to the moment the order appointing him to act in such capacity is entered. In other words, though the transfer of the estate to the beneficiaries results at the instant of death, yet there is no official trustee, no transferee, until the court finally names him. While the appointment of the trustee is the significant taxable event in relation to the exemption claim here in question, other events also occurring subsequent *558 to the death of the testator have been held to affect the inheritance tax assessment. Thus in the Estate of Parrott, 199 Cal. 107 [248 P. 248], the creditor filed his claim for the total amount due on the promissory note of decedent and her brother; but because the decedent's brother as a joint obligor thereafter paid one half of the debt, the inheritance tax appraiser in making his report deducted from the taxable estate only the balance remaining unpaid after the brother's contribution. There had been an understanding from the inception of the indebtedness that the share owing by the joint obligor was not to be considered as the decedent's obligation notwithstanding the potential enforcibility of the entire debt against her or her estate. If the value of the taxable estate transferred by such decedent's will could be determined by the payment of one-half of her debt after the creditor had filed his claim, by a parity of reasoning the taxability of the residuary estate here was properly determinable after the probate court had named the transferee of such residue. [10] As was said in the Parrott case at page 112, while "the right of the state to the tax accrues at the time of death, ... this does not mean that the tax may not be thereafter determined, and when so determined it relates back to the time of death." And in the Matter of LeFevre, 233 N.Y. 138 [135 N.E. 203], the testatrix directed her trustees to incorporate a home for the care of needy children, and then to transfer to that entity a portion of the residue of her estate. In holding such property transfer to come within the statutory tax exemption granted to charitable institutions, the court at page 141 treated it "as if it were in the possession of a corporation already formed under the ... will, or as in the control of the [probate] court, for the purpose of carrying out the [testatrix'] charitable scheme, although at present actually in the hands of the individual trustees." To like effect, see the Estate of Irwin, supra, 196 Cal. 366, 373-374, wherein the LeFevre and similarly adjudicated cases are discussed and their reasoning approved in their determination that the benevolent property transfer took effect eo instante upon the death of the decedent and the formation of the charitable organization was merely a detail of court administration.
 Analogous considerations prevail here where instead of the trustees forming a corporation to administer the trust and operate as the conduit through which the decedent's bounty flows to the beneficiaries, the probate court supplies the supplementary act, within the scope of the tax exemption in question, *559 by appointing a California charitable corporation to execute the testamentary trust created by the testator. [11] Appellant unavailingly argues that no reason for the incapacity of the British Government to act as the trustee appears in the record. That matter has been finally determined, as the above recital of the "agreed statement on appeal" discloses, and the point is now res judicata. [12] However, it may be said that there is no authority for a California resident to make a testamentary transfer of property to a foreign government. (See Prob. Code, 27; The Bank Act, Stats. 1909, p. 87, 1 Deering's Gen. Laws, Act 652; The Alien Property Initiative Act of 1920, Stats. 1921, p. lxxxiii, 1 Deering's Gen. Laws, Act 261.) Furthermore, the prudence of the probate court's rejection of the British Government as trustee of the residuary estate herein is emphasized by the knowledge that our courts have no jurisdiction over that government. In the event it should as trustee disregard judicial orders with respect to the management of the trust property, our probate court would be helpless to enforce them. (See Rustomjee v. The Queen, Law Reports, 1 Q.B.D. [1875-6] 487, 495. [13] From these observations, it is apparent that the probate court, confronted with a vacancy in the trusteeship, "stepped into the shoes of the testator" and named as trustee a corporation which could qualify to act under the laws of this state. It thereby identified the transferee of the testamentary trust estate. While, in so acting, it appointed a trustee entitled to claim the exemption contemplated by section 6, subdivision (1) (b), of the Inheritance Tax Act as above quoted, that was a matter within the exercise of its discretion. Appellant suggests that such conclusion would render the act unconstitutional because "the exempt character of a charitable bequest is made to depend upon ... a purely discretionary" order and "the equal burden of the tax ... is ... destroyed." But there is no force to such position, for the probate court did no more than what the testator himself might have done in choosing a trustee to effectuate the charitable object of his testamentary trust, and the fact that under the prevailing circumstances the probate court was forced to act so as to prevent the trust from failing does not render the act open to constitutional objection.
 The order from which this appeal was taken is affirmed.
 Gibson, C.J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Traynor, J., concurred.