[Civ. No. 23196.  Second Dist., Div. Three.  Oct. 30, 1958.]

Estate of ARTHUR E. ADAMS, Deceased. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association), Appellant, v. ROBERT C. KIRKWOOD, as State Controller, etc., Respondent.

Austin, Austin, Jones & Chaffee and Irving P. Austin for Appellant.

James W. Hickey, Chief Inheritance Tax Attorney, J. D. Lear and Walter H. Miller, Chief Assistant Inheritance Tax Attorneys, for Respondent.

VALLÉE, J.—Appeal from a judgment fixing an inheritance tax.

Arthur E. Adams died testate on June 10, 1956. His only heir is Bertha A. Sill, a sister. His will, executed May 28, 1956, less than 30 days before his death, was admitted to probate. The will, after bequeathing a number of pecuniary legacies, bequeathed and devised the residue of the estate in trust to pay the income to Bertha A. Sill; on her death, to her daughter; and on the death of both to distribute the principal of the trust estate and undistributed income to four charities: American Cancer Center of Cleveland, Ohio, National Foundation of Infantile Paralysis of Cleveland, Ohio, Multiple Sclerosis Society of Cleveland, Ohio, and Crippled

Children Home and Hospital of Elyria, Ohio, in equal shares. The will directed that all inheritance taxes be paid out of the residue and not charged against or collected from any beneficiary.

On July 15, 1957, the probate court made an order for preliminary distribution of the estate which, after ordering distribution of cash legacies, ordered that $9,120.78 cash and stocks of the value of $131,802.50 be distributed to Bank of America in trust for the following uses and purposes:

"(a) Distribution of income to Bertha A. Sill, sister of deceased, and upon her decease to her daughter Mary L. Linnane;

"(b) Upon the death of the survivor of said Bertha A. Sill and her daughter Mary L. Linnane, to distribute the entire principal of the trust estate together with the undistributed income in equal shares to the four charities mentioned in the Last Will and Testament of said Arthur E. Adams, to wit: American Cancer Center of Cleveland, Ohio; National Foundation of Infantile Paralysis of Cleveland, Ohio; Multiple Sclerosis Society of Cleveland, Ohio; and Crippled Children's Home & Hospital of Elyria, Ohio."

There was no objection by Bertha A. Sill or by any other person to this order, and it became final.

On September 23, 1957, the inheritance tax appraiser filed his report in which he taxed to Bertha A. Sill the remainder bequeathed, devised, and distributed to the four charities. Bank of America, the trustee, filed objections to the report, alleging that the bequest to Bertha A. Sill was improperly charged with the tax on the remainder.

At the hearing the matter was submitted on a stipulation of the facts we have stated. The objections to the report were overruled, the report was approved and confirmed, and the court charged the tax on the remainder to Bertha A. Sill. Bank of America, as trustee, appeals.

Appellant contends the remainder which goes to the four charities is tax-free and that Mrs. Sill was erroneously charged therewith. Respondent asserts "the right of an heir to avoid a bequest to charity pursuant to Probate Code sec. 41 is taxable under the inheritance tax law as a transfer to the heir by succession." He argues: the inheritance tax is levied on the transmission of rights to property at death and that the state's right to the tax vests at the instant of death; it may not be affected by subsequent events; what actually passed

to the charities was a right to take the entire property in the event Bertha Sill did not want to take it herself; the market value of this right was nil; what passed to Bertha Sill was the right to take the entire property, the market value of which is the value of the whole thereof. He says that since the will was executed less than 30 days before death, "the charitable gifts are absolutely void."

Probate Code, section 41, provides that no estate may be bequeathed or devised to any charitable or benevolent society or corporation by a testator who leaves a sister surviving him, who, under the will, or the laws of succession, would otherwise have taken the property so bequeathed or devised, unless the will was duly executed at least 30 days before the death of the testator; and that all property bequeathed or devised contrary thereto shall go to the sister of the testator if and to the extent that she would have taken the property but for such devises or legacies; otherwise the testator's estate shall go in accordance with his will and such devises and legacies shall be unaffected.*

A testamentary gift to charity is valid, even though made within 30 days of the testator's death, but the gift may be avoided at the instance of an aggrieved heir of a designated class. (*Estate of Leymel,* 103 Cal.App.2d 778, 781 [230 P.2d 48].) In the absence of objection by an aggrieved party, the gift passes to the charity. (*Estate of Moran,* 122 Cal.App.2d 167, 169 [264 P.2d 598] ; *Estate of Haines,* 76 Cal. App.2d 673, 679 [173 P.2d 693]. Also see *Estate of Leymel,*

*Section 41 in relevant part reads: "No estate, real or personal, may be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, by a testator who leaves a spouse, brother, sister, nephew, niece, descendant or ancestor surviving him, who, under the will, or the laws of succession, would otherwise have taken the property so bequeathed or devised, unless the will was duly executed at least 30 days before the death of the testator. If so executed at least 30 days before death, such devises and legacies shall be valid, but they may not collectively exceed one-third of the testator's estate as against his spouse, brother, sister, nephew, niece, descendant or ancestor, who would otherwise, as aforesaid, have taken the excess over one-third, and if they do, a pro rata deduction from such devises and legacies shall be made so as to reduce the aggregate thereof to one-third of the estate. All property bequeathed or devised contrary to the provisions of this section shall go to the spouse, brother, sister, nephew, niece, descendant or ancestor of the testator, if and to the extent that they would have taken said property as aforesaid but for such devises or legacies; otherwise the testator's estate shall go in accordance with his will and such devises and legacies shall be unaffected."

103 Cal.App.2d 778, 781 [230 P.2d 48]; *Estate of Davison,* 96 Cal.App.2d 263, 266 [215 P.2d 504].) ■ The purpose of section 41 is to protect the heirs named therein; and not to discriminate against charities by limiting their power to take. (*Estate of Dwyer,* 159 Cal. 680, 687 [115 P. 242]; 26 Cal.Law Rev. 309.)

■ A preliminary or partial decree of distribution which has become final is a conclusive determination of the rights of all parties under a testamentary trust even if erroneous. (*Estate of Buckhantz,* 159 Cal.App.2d 635, 642 [324 P.2d 317]; *Estate of O'Connor,* 158 Cal.App.2d 187, 192-193 [322 P.2d 616].) ■ The decree of distribution which distributed cash and stocks to Bank of America in trust is a final determination that the remainder passes to the charities on the termination of the life estates and is res judicata in the later proceeding to assess the inheritance tax. (*Estate of Barter,* 30 Cal.2d 549, 558-559 [184 P.2d 305].) In *Estate of Barter, supra,* the residue of the estate was left by will to the British Government in trust, to be used for charitable purposes. The court appointed as trustee Combined British Charitable Fund, a California corporation, exclusively engaged in and devoted to charitable work. That order became final. Had distribution been made to the British Government, it would have been taxable; if Combined British Charitable Fund was the recipient of the bequest, it would be exempt. Holding that the appointment of a California trustee exempted the transfer from liability within the scope of the inheritance tax law, the court stated (p. 555):

"There now remains for consideration the eligibility of the 'residue of [this] estate' for the inheritance tax exemption by virtue of the first alternative condition in the proviso above quoted. Appellant [Controller] maintains that settlement of this point depends on the testator's will rather than the probate court's order declaring the identity of the trustee. Accordingly, it is his theory that the transfer of the residue to the British Government was effected at the moment of the testator's death and of necessity the transfer tax thereupon became payable; that the right of the state to collect a tax on the residuary estate attached at the same time, and the probate court's action in 'diverting the funds' cannot affect the assessment. As authority for this position, he cites the cases of *Estate of Kennedy,* 157 Cal. 517 [108 P. 280, 29 L.R.A. N.S. 428], and *Estate of Steehler,* 195 Cal. 386 [233 P. 972], where it was held that in the absence of express

statutory provision, homesteads and family allowances, as property distributions made in the probate proceeding pending the administration of the estate and not passing by will or by the intestate laws of the state, were not subject to the burdens of the inheritance tax.  But no such consideration of the severance and 'diverting' of funds from the inheritable estate arises here where the probate court, in the exercise of its 'control' over the decedent's property 'for the purposes of administration, sale or other disposition' (Prob. Code, § 300), made its order effectuating the testamentary trust. . . .

" [P. 556.]   The inheritance tax is not a tax on the property of the decedent but is an excise imposed on the privilege of succeeding to property upon the death of the owner. [Citations.] In the light of such definition, the assessment of the tax against a trust estate is not to be governed solely by the language of the will, but also by such events as affect the beneficial succession to the estate."

The court gave a number of illustrations of events occurring subsequent to the death of a testator which have been held to affect the inheritance tax assessment, and said (p. 556) :

"The beneficiaries of the testamentary trust herein are an indefinite class of persons, that is, British refugee children. They are essentially the devisees under the will [citation] and the British Government was the designated trustee. But the British Government having been found to be incapacitated to act as such trustee, it was incumbent upon the probate court to fill the vacancy so resulting and to appoint a trustee which could qualify.  Pursuant to such duty, the probate court designated the Combined British Charitable Fund, a California corporation.  It qualified and the transfer of the residuary estate was to such trustee.  Such residue did not for one moment pass to the British Government; that entity could not and did not make any attempt to assume the testamentary office.  Hence, in no view of its rights or of its relation to the beneficiaries of the trust does it necessarily follow that the residuary estate was transferred to the British Government, but rather such estate passed by due and proper order of the court to a charitable corporation of this state qualified to administer a charitable trust. That event exempted it from liability within the scope of the inheritance tax law. . . .

" [P. 559.] Appellant unavailingly argues that no reason for the incapacity of the British Government to act as the

trustee appears in the record. That matter has been finally determined, as the above recital of the 'agreed statement on appeal' discloses, and the point is now res judicata. . . . From these observations, it is apparent that the probate court, confronted with a vacancy in the trusteeship, 'stepped into the shoes of the testator' and named as trustee a corporation which could qualify to act under the laws of this state. It thereby identified the transferee of the testamentary trust estate. While, in so acting, it appointed a trustee entitled to claim the exemption contemplated by section 6, subdivision (1) (b), of the Inheritance Tax Act as above quoted, that was a matter within the exercise of its discretion.''

*Estate of Barter, supra,* 30 Cal.2d 549, was followed by this court in *Estate of McIntosh,* 100 Cal.App.2d 240 [223 P.2d 318], in which the probate court by final order determined that a British corporation named as trustee of a charitable trust in a will would not be a suitable trustee, and on petition for partial distribution appointed a California corporation trustee and distributed the residue of the remainder after the death of the life beneficiary to it. In fixing the inheritance tax the probate court held that the remainder interest passed to the California corporation wholly exempt from all California inheritance tax. If the court had appointed the trustee named in the will and had distribution been made to it, the estate transferred would have been taxable. The transfer was held exempt.

*Estate of Radovich,* 48 Cal.2d 116 [308 P.2d 14], was an appeal from a judgment fixing an inheritance tax. George Radovich had been adopted by the decedent, Jack Radovich, without formal adoption proceedings. On a petition to determine heirship the probate court decreed that George had the equitable status of an adopted son of the decedent and was entitled to all of the estate with the exception of a sum George had transferred to relatives of the decedent. This decree became final. After this decree became final an inheritance tax appraiser reported, claiming that George was a stranger in blood to the decedent, and computed the tax on that basis. On objections to the report the court adjudged that George was a transferee of the class of an adopted child and fixed the tax accordingly. Holding the decree in the proceeding to determine heirship was binding in the later inheritance tax proceeding, the court on review stated (p. 120):

"This court has held [citation] that the jurisdiction of the

probate court is a jurisdiction in rem; that an heirship proceeding is not an ordinary civil action, but a specialized proceeding in rem. The res is the right of heirship and distribution and as to that issue the decree is binding on the whole world. . . .

"[P. 121.] In the heirship proceedings, it was adjudged that George was entitled to inherit all of Jack's estate, and for the purposes of probating the estate he was adjudged to be in equity 'an adopted son.' That determination has long since become final.

"In *Estate of Bloom*, 213 Cal. 575, 580 [2 P.2d 753], it was held that the tax imposed by the Inheritance Tax Law is on the right to succeed to the property of the estate, rather than upon the property itself. [Citation.] The heirship decree adjudging that George was, in equity, the adopted son of Jack, and therefore entitled to succeed to his property, as an heir, was the basis for the imposition of the inheritance tax. Inasmuch as George takes Jack's estate only by reason of the adjudication of his status as Jack's adopted son and heir, it appears that appellant [the Controller] may not claim that he *inherits* as a stranger. The conclusion of the trial court sitting in probate as to George's right to inherit as the adopted son of Jack may have been erroneous but it was an action in rem which is now final. . . .

"Appellant contends that the probate decree as to George's right to inherit as an adopted son is not binding upon the state inasmuch as the state could not have been a party to the heirship proceeding. Appellant's argument that the state was not a proper party to the heirship proceeding is quite correct (Prob. Code, §§ 1080 et seq.) but it appears, also, that the appellant's argument is inconsistent with its attempt to tax the inheritance here involved by classifying George as a stranger (Rev. & Tax. Code, § 13310). . . .

"[P. 123.] Since only an heir may inherit and since George was not a grantee, donee, vendee, assignee, or beneficiary of Jack, it follows that in view of the probate decree he took Jack's estate as his adopted child and heir (§ 13307, subd. (b)) and appellant's argument must fail. . . .

"It clearly appears that since the inheritance tax to be levied depended in the first instance on the probate court's findings as to heirship and George's right to succeed to the property [citation], such finding must be binding on the state as well as on all others."

On facts similar to those here the Circuit Court of Appeals for the Ninth Circuit in *Mead* v. *Welch,* 95 F.2d 617, said that Civil Code, section 1313, the predecessor of Probate Code, section 41, was not a mortmain statute, citing *Estate of Dwyer,* 159 Cal. 680 [115 P. 242], and continued (p. 619):

"It has also been held that the statute cannot be invoked after a decree of partial distribution has been entered, even though it affirmatively appears that the bequest exceeds the one-third limit. *McGavin* v. *San Francisco Protestant Orphan Asylum Soc.,* 34 Cal.App. 168 [167 P. 182]; *Estate of Kearney,* 13 Cal.App. 92 [109 P. 37]. See also *Humphrey* v. *Millard,* 2 Cir., 79 F.2d 107. It appears from the findings that a decree of distribution has been entered in due course of administration."

Authorities in other jurisdictions are in accord with the view that the mere right to defeat a bequest or devise to charity, when not exercised, is not taxable. The facts in *In re De Lamar's Estate,* 203 App.Div. 638 [197 N.Y.S. 301], were similar to those at bar. A New York statute prohibited a devise of more than half of the net estate of a testator to charity if there was a wife, child, or parent of the testator surviving. The will devised more than half of the net estate to charity. A daughter, who was the only person to be benefited by the statute, expressly waived all her rights under the statute. The surrogate held that such portion of the estate devised to charity as exceeded half thereof passed to the daughter and was taxable to her. On review the court held that after the daughter waived her right to attack the bequest no transfer tax could be levied on the bequest to exempt charities insofar as it exceeded half of the net value of the estate as a transfer to the daughter.

*In re Sonderling's Will,* 157 Misc. 231 [283 N.Y.S. 568], held that where the bequest to charity exceeded the statutory limit a property right was not created in one who had a statutory right to attack the bequest until he first sought to assert his right, and that (p. 573 [283 N.Y.S.]) "The failure to assert the right to contest the validity creates a waiver and permits the charity to take the whole estate. . . . Where the whole estate, as in the instant case, is given to charities, subject to certain trusts, the gift to such charities over and above one-half of the estate becomes vested in such charitable corporations, subject, however, to divestiture." (To the same effect, *In re Donnelly's Estate,* 172 Misc. 107 [14 N.Y.S.

2d 700], in which it is said (p. 702 [14 N.Y.S.2d]) : ''The gift of such overplus is not void but merely voidable, depending on whether or not some individual enumerated in the statute chooses to initiate a proceeding appropriate for the subversion of the indicated testamentary wish of the decedent.'')

*In re Webster's Estate,* 178 Misc. 342 [33 N.Y.S.2d 862], states (p. 864 [33 N.Y.S.2d]) :

''Many instances exist of gifts exceeding the limit under the statute being wholly validated by inaction of the persons in the privileged class. Such inaction may be due to many motives of a purely personal nature. Gifts to charity are not frowned upon. There is no public interest against them. There is no public policy which voids the gift because of the excess. All that the statute provides is that when one of the privileged class asserts that the gift is in excess of the statutory limit such a challenge on proper proof will result in a diminution of the gift. *The statute confers only a personal individual right. It does not establish ipso facto a property right in the excess which would pass as a chose in action to the representative of a deceased member of the favored class.* This construction is in accord with the history and spirit of the statute and with the discussions of the courts which have dealt with it.'' (Emphasis added.)

In *Commissioner of Internal Revenue* v. *First Nat. Bank,* 5 Cir., 102 F.2d 129, the will, executed 89 days before the testator's death, made a number of charitable bequests. The Revenue Act exempted charitable bequests from the federal estate tax. A Georgia statute provided that a will containing a bequest to a charitable institution, when the testator left a wife or child or descendant of child, ''must be executed at least 90 days before the death of the testator, or such devise shall be void.'' The Georgia courts had held (p. 130) ''that the assent and waiver of the persons entitled to object having been given, 'the devises in question are valid, and the executors are directed to carry them out.' '' ''[P. 130.] [T]he decedent's widow and only surviving child renounced all rights they might have under the Georgia statutes, to contest these bequests. . . . The Commissioner, taking the position that the Georgia Code regulating the making of charitable bequests, and declaring void any devise made less than 90 days before the testator's death, nullified these bequests or at least, deprived them of that definiteness essential to deductibility,

refused to allow them. The Board of Tax Appeals, ruled otherwise.'' The Circuit Court of Appeals held that since the bequests were (p. 131) ''unobjected to, they stand as valid as against those having right to contest or object to them, they stand also as valid and definite for the purposes of taxation.''

In *Humphrey* v. *Millard*, 2 Cir., 79 F.2d 107, a New York statute provided that no person having a spouse, child, descendant, or parent shall devise or bequeath more than half of his estate to charity, and that ''such devise or bequest shall be valid to the extent of one-half, and no more.'' The New York courts had construed the statute (p. 107) ''to mean that only persons directly to be benefited may take advantage of it, and that devises and bequests exceeding one-half of the testator's estate are not void, but voidable.'' The will devised or bequeathed more than half the estate to charity. The widow, who was the only person to be benefited by the statute, expressly waived all her rights thereunder. The question was whether the value of the devises and bequests to charity were deductible in computing the federal estate tax. The court stated (p. 108):

''[D]efendants insist that, as the waiver was after the testator's death, it is of no moment, for the reason that deductibility must be determined from what is known as of the date of death [citation], at which time the rights of the widow in the residuary estate, except as to one-half, make that too uncertain to be deductible as a whole [citation].

''But here no uncertainty existed at the time Mr. Crosby died which was inherent in the language of his will. But for the New York statute above quoted, the provisions of the will disposing of the residuary estate were definite enough. [Citations.] Until and unless the widow exercised her statutory right to defeat partially the tax-exempt testamentary disposition of the residuary estate which her husband had made, his will was effective as to all of it. This right was in the nature of a power which could be renounced. Her waiver of it was unnecessary to make the will valid. [Citation.] It was but the termination of a possibility that the valid will would not continue to apply to a portion of the estate to which it did apply at the instant of death and thereafter, and was of importance in the proceedings for the probate of the will in the Surrogate's Court.'' (To like effect, *Dimock* v. *Corwin*, 2 Cir., 99 F.2d 799, 802; *Delaney* v. *Gard-*

*ner*, 1 Cir., 204 F.2d 855, 859. *Cf. Commissioner of Internal Rev.* v. *Macaulay's Estate*, 2 Cir., 150 F.2d 847, 851.)

■ Respondent relies on section 13409 of the Revenue and Taxation Code, which reads:

"If a transferee under a will renounces his rights under the will, or any part thereof, or agrees that the estate, or any part of it, shall be distributed otherwise than as provided in the will, the tax is nevertheless computed in accordance with the terms of the will admitted to probate. If an heir waives or renounces his interest in the estate, or enters into an agreement that the property to which he is entitled shall be distributed otherwise than in accordance with the laws of succession, the tax is nevertheless computed as if he had not so waived or renounced."

The first sentence of the section appears to apply in case the decedent died testate; the second sentence, in case the decedent died intestate. The section covers two emergencies: First, the renouncement by a transferee under a will of his rights under the will. Manifestly Mrs. Sill did not renounce any rights under the will. Second, the waiver or renouncement by an heir of his interest in the estate. Mrs. Sill did not waive or renounce any interest in the estate; she merely failed to exercise a right to defeat the bequest to the charities. She did not let any inheritance pass to charity, as respondent asserts. On admission of the will to probate title to the remainder vested in the charities (Prob. Code, § 300), subject to being defeated by the exercise of Mrs. Sill of her right. She had no interest as an heir in the property bequeathed or devised to the charities. Section 13409 has no application.

■ The bequests to the charities were valid. The remainder vested in the charities on the death of the testator. The bequests were subject to being defeated at the instance of Mrs. Sill. The decree of preliminary distribution distributed the remainder to the charities. Mrs. Sill made no objection to the decree. It became final. It was binding on the state in the inheritance tax proceeding. The remainder did not for a moment pass to Mrs. Sill. Her inaction did not vest any interest in the remainder in her. By its order of preliminary distribution the court identified the transferee of the remainder. The order is the basis for determining the inheritance tax, if there is one. Any right Mrs. Sill may have had under section 41 may not be invoked as the basis for an inheritance tax after the order of preliminary distribution became final. ■ The mere right to defeat a devise or bequest to

charity, when not exercised before a decree of distribution becomes final, is not taxable.

Reversed.

Shinn, P. J., and Nourse, J. pro tem.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 23, 1958. McComb, J., did not participate therein.

*Assigned by Chairman of Judicial Council.